# Tesson, Appellant, *v.* Porter Company.

*Roads and highways—Streets—Dedication—Private plans—Municipal approval—Reference in deed—Vacation.*

1. When one who is the owner of a tract of land in a municipality cuts it up into lots and sells them as laid out on a plan which he has adopted, showing streets and alleys thereon, there is not only an implied covenant by him to the owner of each lot that the streets and alleys, as they appear upon his plan, shall be forever opened to the use of the public, but a dedication by him of the same as highways to the public forever, and the municipality itself cannot extinguish the easement which each lot owner thus acquires by private contract with the owner of the plotted ground; but no such implication exists where the owner merely lays out his plan

to conform to the streets as located and established by the municipality within which they are embraced, and no lot included in the owner's plan is sold by him until after the location and adoption as a public highway by the municipality of every street and alley appearing on the owner's plan.

2. A plan of the streets and alleys of a ward in a borough was approved by the borough on March 22, 1867, under the provisions of the Act of April 11, 1866, P. L. 592. On March 26, 1867, two deeds dated March 21, 1867, were acknowledged and placed of record by which the vendor as owner conveyed two lots designated by numbers on a private plan of the vendor. The exact date of this private plan was not designated but on April 5, 1871, it was acknowledged and placed upon record by the vendor. The location and width of the streets and alleys designated upon it were identical with those upon the plan of the borough. No other lots on this private plan were conveyed by the vendor by deeds bearing date prior to the date of approval of the borough plan. On July 1, 1868, the vendor conveyed lot No. 11 on his private plan. In 1910 the City of Pittsburgh, to which the borough had become annexed, vacated two streets shown upon the plans upon the petition of a manufacturing company, which had become the owner of all the property abutting on the two streets so vacated, and the company proceeded to obstruct the streets with the intention of closing them up and erecting buildings thereon. The successor in title to the grantee of lot No. 11 filed a bill in equity for an injunction to restrain the manufacturing company from closing or in any manner obstructing or building upon either of the streets. *Held,* that the streets appearing upon the owner's plan were highways laid out by the borough and not thoroughfares created by the owner for the benefit of future owners of lots on his plan and that the city was, therefore, fully authorized to vacate the streets and alleys without violating any implied covenant by the original owner to his grantees and that the injunction should not issue.

Argued Oct. 28, 1912. Appeal, No. 69, Oct. T, 1912, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1911, No. 442, in equity, dismissing the bill in equity in the case of Gertrude M. Tesson v. H. K. Porter Company, a corporation of Pennsylvania. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Appeal dismissed.

Bill in equity to restrain the obstruction of a street.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the dismissal of the bill.

*Leonard K. Guiler,* for appellant.—The mere adoption of the plan of lots after the approval of the municipal plan was not sufficient to deprive the lot owners of a private easement in the street and alley, as shown on the plan. Defendant was bound also to show that the street and alley had been located and opened according to law prior to that time: District of Pittsburgh, 2 W. & S. 320; Bush v. McKeesport, 166 Pa. 57; Com. v. Railroad Co., 135 Pa. 256; Com. v. Kline, 162 Pa. 499; Brooklyn Street Opening, 118 Pa. 640; Fitzell v. Philadelphia, 211 Pa. 1; Neely v. Philadelphia, 212 Pa. 551; Carroll v. Asbury, 28 Pa. Superior Ct. 354; Hancock v. Philadelphia, 175 Pa. 124; Lehigh Street, 81 Pa. 85; Dobson v. Hohenadel, 148 Pa. 367; O'Donnell v. Pittsburgh, 234 Pa. 401; Morrow v. Traction Co., 219 Pa. 619; Quicksall v. Philadelphia, 177 Pa. 301; Jessop v. Kittanning Boro., 225 Pa. 583; Peoples Nat'l Bank v. Liquid Carbonic Co., 226 Pa. 503; Wickham v. Twaddell, 25 Pa. Superior Ct. 188; Black v. Railway Co., 34 Pa. Superior Ct. 416; Woodward v. Pittsburgh, 194 Pa. 193.

*Samuel McClay,* of *Reed, Smith, Shaw & Beal,* with him *McCook* and *Jarrett,* for appellee.—Where a street has been laid out by municipal action, the reference to a street in a deed is by way of description only, and does not constitute a dedication: Bellinger v. Union Burial-Ground Society, 10 Pa. 135; Brooklyn Street Opening, 118 Pa. 640; Wayne Avenue Opening, 124 Pa. 135; Bliem v. Daubenspreck, 169 Pa. 282.

OPINION BY MR. JUSTICE BROWN, January 6, 1913:

The purpose of appellant's bill is to restrain the ap-

pellee, a manufacturing company, from closing or in any manner obstructing or building upon either Forty-ninth street (formerly Lothrop street) or Hulburt alley (formerly Hemlock alley) between Forty-ninth and Fiftieth streets, in the City of Pittsburgh. Sometime prior to December 4, 1866, P. Harvey Miller became the owner of a tract of land in what was then Collins Township, Allegheny County. This tract included a piece of ground bounded on the south by Butler street, on the west by the centre line of Forty-ninth street, as now located, on the north by the Allegheny Valley Railroad and on the east by the centre line of what is now Fiftieth street. This piece of ground became a part of the Second ward of the Borough of Lawrenceville, and that borough, on January 1, 1868, was annexed to and became a part of the City of Pittsburgh. Some time after Miller purchased the tract of land he laid out a plan of lots of that portion of it now bounded by Butler street, the Allegheny Valley Railroad, Forty-ninth and Fiftieth streets. The exact date of the plan was not disclosed in the proceedings in the court below, but on April 5, 1871, Miller acknowledged it and placed it upon record. The location and width of the streets and alleys designated upon it are identical with those shown upon the plan of the Borough of Lawrenceville, to which reference will be made. The appellant is the owner of lot No. 11, on Miller's plan, having a frontage of twenty feet on Harrison street and extending back one hundred feet to Plum alley. Harrison street and Plum alley both appear on Miller's plan. The lot No. 11 was conveyed to appellant's grantor by Miller on July 1, 1868, and by him conveyed to her February 24, 1891. She is also the owner of lot No. 62 on the Miller plan, the same having been conveyed to her by deed dated November 18, 1910. By a deed dated March 21, 1867, and acknowledged March 26, 1867, Miller conveyed to George F. Harris lot No. 28, on the plan referred to, and, by a deed bearing even date and also acknowledged on March 26th,

he conveyed lot No. 25 on the plan to Henry Smith. No other lots on the plan were conveyed by Miller by deeds bearing date prior to March 22, 1867, and no one of the four named fronted either on Forty-ninth or Fiftieth street or on Hulburt alley.

Under the provisions of an act of assembly approved April 11, 1866, P. L. 592, the Borough of Lawrenceville, through its regulator, prepared, during the year 1866 and in the early part of 1867, a plan of the streets and alleys of the Second ward of the borough. This plan was submitted to and adopted by the borough council at a meeting held March 22, 1867. Lothrop street (now Forty-ninth street) and Hulburt alley (formerly Hemlock alley) are shown on the plan so adopted. The second section of the Act of April 11, 1866, provided as follows: "The said burgess and town council shall have authority to lay down and adopt a general plan of said borough, in sections, or otherwise, embracing all the streets and alleys, now existing in said borough, and such other streets and alleys as the future convenience of the citizens of said borough shall require, with the width of said streets and alleys marked thereon, in feet and inches, and with such reference to known landmarks as shall be necessary to identify the location of the said streets and alleys; the said plan, when made, shall be deposited in the office of the burgess of said borough, for public examination and inspection, of which notice shall be given, by publication, in two newspapers in the City of Pittsburgh, one English and the other German, during at least two weeks; the ground embraced within the lines of said streets and alleys shall be reserved by the owner, or owners thereof, subject to be opened as public highways, whenever the public exigencies shall require it; and all plans of lots, which shall be hereafter laid out, shall be arranged so as to correspond with the general plan of said borough." The appellee is the owner of all the property on each side of Forty-ninth street, between Harrison street and

the Allegheny Valley Railroad, and on each side of Hulburt alley, between Forty-ninth and Fiftieth streets, and upon this property it has erected and has in operation a plant for the manufacture of steam engines and other machinery. Upon its petition, as owner of all the abutting property, the City of Pittsburgh, by two separate ordinances, duly passed and approved July 18, 1910, vacated Hulburt alley, (formerly Hemlock alley) between Forty-eighth and Fiftieth streets, and Forty-ninth street, from Harrison street to the line of the Allegheny Valley Railroad. Each of these ordinances required the appellee to pay into the city treasury the sum of $2,000 in consideration of the vacation of the street and alley. These sums were duly paid within the time prescribed by the ordinances, and the defendant company, upon the assumption that the said street and alley had been lawfully vacated, proceeded to obstruct them and was about to close them up and erect buildings thereon for its use in connection with its manufacturing business when this proceeding was instituted in the court below to enjoin it.

The contention of the appellant is that Miller's sale of lots Nos. 25 and 28 to Smith and Harrison, by deeds dated March 21, 1867, and acknowledged five days later, was a dedication by him of the streets and alleys on his plan to the use not only of his said two vendees, but to all subsequent purchasers of lots on the plan, and the City of Pittsburgh cannot, therefore, vacate any of the said streets or alleys without the consent of all the owners of lots on the plan. If the situation were what appellant seems to conceive it to be, many authorities would sustain her, for if anything is to be regarded as settled, it is that, when one who is the owner of a tract of land in a municipality cuts it up into lots and sells them as laid out on a plan which he has adopted, showing streets and alleys thereon, there is not only an implied covenant by him to the owner of each lot that the streets and alleys, as they appear upon his plan, shall

be forever opened to the use of the public, but a dedication by him of the same as highways to the use of the public forever, and the municipality itself cannot extinguish the easement which each lot owner thus acquires by private contract with the owner of the plotted ground: Transue v. Sell, 105 Pa. 604; Quicksall, et al., v. Philadelphia, 177 Pa. 301; Garvey v. Refractories Company, 213 Pa. 177; O'Donnell v. Pittsburgh, 234 Pa. 401. But no such situation is here presented. There is nothing in the testimony to show a plan by Miller upon which he originally located streets and alleys. On the contrary, as the learned chancellor below justly concluded, he laid out his plan to conform to the streets as located and established by the municipality, and no lot included in his plan was sold by him until after the borough had located and adopted as a public highway every street and alley which appeared on his plan. The existing streets and alleys of the Second ward of Lawrenceville, and such others as the future convenience of the citizens might require, were located by the borough regulator, as just stated, during the year 1866 and in the early part of 1867, in accordance with the provisions of the Act of April 11, 1866, and his location and plan of those streets and alleys were adopted and approved by the council of the borough on March 22, 1867. From that time all of the streets and alleys, as shown on the borough plan, were located, but unopened, public thoroughfares, subject to the control of the borough. The ground upon which they were located was to be reserved by the owner, but they were "subject to be opened as public highways, whenever the public exigencies" should require it. Among these highways were Forty-ninth street and Hemlock (now Hulburt) alley. They had not yet become actual public highways so as to make any one obstructing them liable to indictment: Commonwealth v. Railroad Company, 135 Pa. 256; Commonwealth v. Kline, 162 Pa. 499; but they

were nevertheless located streets under the control of the borough.

While the deeds from Miller to Smith and Harris are dated March 21, 1867,—the day before the regulator's plan was approved by the borough council—they were not acknowledged by Miller until March 26—four days after the borough plan had been adopted—and the presumption, therefore, is that they were not delivered until March 26, 1867. The unavoidable inferences under the undisputed facts are that Miller's plan was prepared to conform to the regulator's plan, as he was required to make it conform by the Act of 1866, and that no sale of lots was consummated by him until after the borough had adopted its plan. If, in adopting that plan, it appropriated his land for streets to be subsequently opened, the municipality would become liable to him for damages when they were opened, unless his claim for the same was released: In re Opening of Brooklyn Street, 118 Pa. 640; but, if, as the appellant contends, Miller himself had dedicated the streets and alleys to public use, he could have no such claim. The question before the court in the Brooklyn Street case was, "Does one who, in making a deed of his land, refers as a boundary to a street laid out but not opened, thereby dedicate so much of his land as lies within the street limits to the public, and thus deprive himself of a right to compensation when his land is actually taken?" In holding that he was entitled to compensation when his land was actually taken by the opening of the street, we said: "If the question were one between a grantor and grantee, and involved a right of way over the street upon which the land conveyed bordered, of course the grantor must make good his covenant that there was a street corresponding with the one described in the deed. But that is the law, not upon the theory of a dedication to public use, but upon the implied contract between the parties. As between them, every consideration required that if the ground conveyed is described as bordering upon a

street, the street should be there in compliance with the description. If it be a public street laid out by municipal authority, the grantee is presumed to know that fact, and takes his title subject to the municipal control as to the time and circumstances of opening it for use. If it be a street laid out by the grantor himself over land which he sells in lots, there is necessarily an implied covenant that he will open it at least for the use of his grantees. But when a municipal government lays out streets upon the land of a private citizen, it is not the act of the owner in any sense, and hence there is no necessity for an implication of a covenant against the owner to give his land to the public without compensation, nor even to dedicate it to public use. Why, then, shall these implications be made in a case where the street is laid out by municipal action and the owner does nothing whatever as to the public, and nothing as to his private grantee except simply to refer, as matter of description in his grant, to a street laid out, but not opened, by public authority. In making such a grant the public is not in privity with him; his dealing is not with them but with a private citizen. Whatever may be his obligation to that citizen because of the private contract between them, no analogy requires a similar deduction to be made between the owner and the public. Of course an owner may dedicate his ground to public use as streets by dividing his land into lots and streets upon a plan made for the purpose and selling the lots in accordance therewith. But in such case the acts done are his own acts, and because they are his they justify the inference of dedication." A much earlier case to the same effect is Bellinger v. Union Burial-Ground Society, 10 Pa. 135. The situation there is thus given in the syllabus: A sale of a lot by a plan on which a public street is laid out as one of the boundaries, the conveyance describing the lot as a lot on W. street, as the same shall be opened, and bounded on the south by W. street, does not create a covenant on which the

grantors are liable, where the street was subsequently vacated by legislative authority, and the grantors entered upon and occupied the land over which it was laid out. In so holding, Mr. Justice COULTER said: "Every lot granted must have a boundary to fix its locality; and what boundary so fit and proper as a street, laid out, marked and declared a public highway, according to law? It was not then actually open, but to be opened when public convenience required. This both parties knew, for it was the law—and all people are supposed to know the law on the subject about which they contract. That public conveniences should demand its being opened, or that public conveniences might require it to be vacated, were events in futuro, alike inscrutable and inaccessible to both the contracting parties, and governed by a power overreaching their contract. Each was, therefore, governed by his own knowledge and judgment, and not by any averment or suggestion of the other, nor by anything supposed, on the part of either; the words must therefore, in all fairness, be understood to have been intended to fix the terminus of the grant, and not a covenant that the public should keep the street open forever. It would be a novel legal doctrine to broach over the broad lands of the State, that if one sold land bounded by a public highway, he might be sued for covenant broken, if the public, in any time to come, should vacate the highway. The parties describe the subject of the contract under an existing state of things, as known and accessible to everybody. But this does not amount to a covenant that this state of things shall be perpetual." Where reference is made by a grantor to a street located by a municipality, but unopened, it is merely for the convenient description of the property. In so holding In re Opening Wayne Avenue, 124 Pa. 135, it was said: "Where the deed describes the land as crossing Wayne street, and again as recrossing it, it is precisely as if the deed had described it as crossing a brook or other natural feature of the

land, and is no more a dedication of the land to public use in the one case than it would be the dedication of the brook in the other, in the sense of preventing the owner from claiming damages for the opening. It is not necessary to say anything to vindicate the ruling in Brooklyn Street. It is sufficient that the present case comes within it."

As the appellant has manifestly misconceived the real situation, the many authorities cited by her learned counsel have no application to the existing state of facts. As an illustration, it may not be inappropriate to refer to Dobson v. Hohenadel, 148 Pa. 367,—the case upon which main reliance is placed as an authority calling for a reversal of the decree. The sole question before the court in that case was as to the right of the Dobsons, grantors of Hohenadel, to assert, as against him, title to the bed of a street which they had plotted, and to the centre of which, along his lots, they had, by their deed to him, conveyed all their interest, in the absence of an express reservation of it. When the City of Philadelphia surrendered its right to take the plotted site for a street, nothing reverted to the Dobsons, and that was all the case decided, for there was nothing else before the court. Such is not the question here. To sum up the situation before us, the streets appearing on the Miller plan were highways laid out by the Borough of Lawrenceville; they were not thoroughfares created by Miller for the benefit of the owners of the lots on his plan, and the City of Pittsburgh, the successor of the Borough of Lawrenceville, was, therefore, fully authorized to vacate the streets and alleys without violating any implied covenant by Miller to his grantees of a right to use them forever. No distinct private right, different from the rights of the public generally, was conferred by Miller upon any one of the lot owners, and the appeal from the decree dismissing plaintiff's bill is, therefore, dismissed with costs.