# CASES

IN

# THE SUPERIOR COURT

OF

# PENNSYLVANIA

Stivason *v.* Serene and Serene, Appellants (No. 1).

*Streets—Dedication—Plan of lots—Failure to record plan—Obstruction of street—Removal—Jurisdiction—Equity.*

Where the owner of real estate sells a part thereof, with reference to a plan of lots and to streets named thereon, such sale is a dedication of the streets shown on the plan, and referred to in the deed, so that neither the proprietor of the plan nor a purchaser thereunder can thereafter deny the public the right to the use of the streets which is appurtenant to every lot on the plan. It is immaterial that the plan was not recorded during the lifetime of the grantor if the purchasers had knowledge of it.

A court of equity has jurisdiction to compel, by injunction, the removal of an obstruction to a street thus dedicated, where the defendant responsible for the obstruction is chargeable with knowledge of the plan.

Argued April 17, 1922. Appeal, No. 18, April T., 1922, by defendants, from decree of C. P. Westmoreland County, in equity, No. 1031, dismissing exceptions to decree nisi, and confirming absolutely the decree granting relief prayed, in the case of W. B. Stivason v. J. C. Serene and J. W. Serene. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Bill in equity for an injunction to compel removal of obstructions to streets. Before COPELAND, J.

2   STIVASON *v.* SERENE & SERENE, Appel. (No. 1).

Statement of Facts—Opinion of the Court. [80 Pa. Superior Ct.

The facts are stated in the opinion of the Superior Court.

The court below entered a decree nisi, granting the relief prayed, and subsequently, after exceptions, the decree nisi was confirmed absolutely by the court en banc, and made the final decree of the court. Defendants appealed.

*Error assigned,* among others, was the decree of the court.

*Charles C. Crowell,* for appellant.—The streets were never dedicated to public use: Cotter v. Phila., 194 Pa. 497; Scott v. Donora S. Ry. Co., 222 Pa. 642; Shamokin v. Helt, 250 Pa. 80.

The adverse possession of appellants establishes their title to the land on which the obstructions stand: Olewine v. Messmore, 128 Pa. 470.

*Robert W. Smith,* and with him *Charles K. McCreary* and *James S. Moorhead,* for appellee.—Dedication of streets by sale of lots referring to a plan is an irrevocable dedication: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; O'Donnell v. Pittsburgh, 234 Pa. 401.

OPINION BY GAWTHROP, J., July 13, 1922:

Plaintiff seeks by this bill in equity to compel defendants to cease obstructing and occupying for private purposes any part of certain public streets to the use of which plaintiff avers he was entitled as ways appurtenant to certain lots of land owned by him  After answer filed and issue joined by replication, the case was tried and the lower court granted the relief prayed for. Defendants appealed.

The facts have been found and stated at length by the learned chancellor in the court below and a brief summary of them will suffice here. William Stewart died in 1876. During his lifetime, he owned a tract of land be-

STIVASON *v.* SERENE & SERENE, Appel. (No. 1).   3

1, (1922).]                    Plan of Lots.

4 STIVASON *v.* SERENE & SERENE, Appel. (No. 1).

Opinion of the Court. [80 Pa. Superior Ct.

tween Loyalhanna Creek and the Conemaugh River in Loyalhanna Township, Westmoreland County, and on a portion of this tract he laid out a plan of lots, which now is, and probably then was, known as Point Pleasant. This plan of lots was divided into blocks from "A" to "H" inclusive, "H" occupying a nook or loop in the land formed by a bend of the Loyalhanna Creek. After laying out this plan, William Stewart, on the 2d day of October, 1873, sold and conveyed to his three sons Block "H" without reference to any plan or street. Afterward, in his lifetime, he sold two lots in this plan, being Nos. 1 and 2 in Block "E" to William Murray and wife. These lots passed by various conveyances until they reached the ownership of Harry K. Johnston who is now in possession of them. The plan of lots has three streets running east and west known as Water Street, Stewart Street and Mill Street and three streets running north and south known as First Street, Second Street and Third Street. Two alleys parallel the first-named streets, the one nearest Mill Street being known as Rock Alley. Mill Street and First Street are the streets over which this contention arises; that is they are the streets alleged in the bill of complaint to have been closed. William Stewart died without having signed the dedication of his plan and without acknowledging or recording it. Nearly all of the lots in the plan have been sold and in accordance therewith. The plaintiff is the owner of lots Nos. 4 and 5 in block "E" fronting on Stewart Street and bounded also by Second Street, Rock Alley and lot No. 3. He is also the owner of lots Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 in Block "F," being all the lots in that block and they are bounded by Mill Street, Second Street and Third Street with Rock Alley running between them in the middle of the block. The last five lots front on Mill Street and have for side streets Second and Third streets. Defendants are the owners of the following: Lots Nos. 6, 7, 8, 9 and 10 in Block "E" fronting on Mill Street between First and Second Streets; a tract of land on the other

side of Mill Street, the deed for which calls for Mill Street as a boundary; a parcel of land described as bounded by First Street and Stewart Street; a piece of land which, as described in the deed, indicates the existence of First Street and Water Street as boundaries. Defendants have fenced in and occupied the whole of Mill Street and all of First Street from Mill Street to Rock Alley and a portion of First Street from Rock Alley almost to Water Street. They have refused to remove any of these obstructions, although notice was given to them to do so before the filing of the bill.

It is impossible to read the record in this case without concluding that the defendants purchased all their land, either that within the Point Pleasant plan or outside, with knowledge of the plan. The deed of W. H. Haines and wife to the defendants, dated December 18, 1903, conveys to them 3.354 acres of land which is described as beginning at a point on line of Mill Street in plan of Point Pleasant. The deed of Jennie B. Haines and husband to defendants, dated May 28, 1909, conveys to them certain land on the bank of Loyalhanna Creek, the first course in the description calling for the northwest side of First Street, thence along the line of First Street to a post in the southwest line of Stewart Street. The deed of John C. Kipp and wife to defendants, dated October 14, 1907, conveys to them lots Nos. 6, 7, 8, 9 and 10 in Block "E" in the plan of lots, having a frontage of 300 feet on Mill Street and extending back between First and Second streets, preserving an even width from front to rear a distance of 120 feet to Rock Alley.

A court of equity has jurisdiction over a bill for an injunction to compel the removal of obstructions to an easement when it appears that the plaintiff's rights to the use of the easement is clear: Wilson v. Cather, 214 Pa. 3. "If there is anything settled by judicial decision in this State, it is that a sale of lots according to a plan which shows them to be on a street implies a grant, or covenant

6   STIVASON *v.* SERENE & SERENE, Appel. (No. 1).

Opinion of the Court.   [80 Pa. Superior Ct.

to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of it to public use; and that the owner of any lot in the general plan may assert the public character of any street and the right of the public to use it. The rights in dedicated streets acquired by a purchaser of lots by a deed referring to a plat are private contract rights......The proprietor of the plan, therefore, cannot revoke the implied easement or dedication; nor can the owner of any lot or lots, having purchased with a knowledge of the plan in accordance with which the lots were sold, obstruct or deny to the public the right to use any of the streets or alleys shown on the plan. The easement over the streets is appurtenant to every lot and becomes a property interest in the purchaser of the lot which may be protected by appropriate legal process": O'Donnell v. Pittsburgh, 234 Pa. 401. As between parties claiming under William Stewart and having notice of the plan of lots, it is immaterial whether the plan was signed, acknowledged or recorded: O'Donnell v. Pittsburgh, 234 Pa. 401. Such parties are charged with notice of all the plan contains. In the case in hand, it appears that William Stewart sold but two lots in this plan, but his executors sold many lots according to the plan and described the lots by their numbers on the plan. The defendants claim from William Stewart and are affected by what appears in the chain of their title. Notice of the plan of lots is directly in the chain of their title and they cannot obstruct the use of the streets and alleys shown on the plan.

It is urged by the learned counsel for appellant that the Act of May 9, 1889, P. L. 173, is controlling in this case. This statute is entitled, "An Act relating to unused streets, lanes and alleys," and provides: "That any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years

STIVASON v. SERENE & SERENE, Appel. (No. 1). 7

1, (1922).]          Opinion of the Court.

next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been or, shall be, laid out." Does the act apply to this case? The making of the plat by William Stewart in 1873 and the subsequent sale of lots therefrom constituted a dedication of all the land in the bed of the streets to public use: Quicksall v. Phila., 177 Pa. 301. In the latter case, plaintiffs sought to recover damages for the opening by the city of certain streets. By reason of their purchase of lots bounded by these streets, plaintiffs claimed ownership of the land to the middle thereof. The lots had been bought according to a plan describing them as bounded by these streets. Mr. Justice FELL spoke for the Supreme Court as follows: "The dedication by plaintiffs' grantors in 1848 operated as a relinquishment of all claims for damages for the use of the land within the lines of the streets for street purposes, and no claim for damages can be sustained unless by reason of the Act of May 9, 1889, P. L. 173." After quoting the language of the act, he continued: "The purpose of the act is to relieve land upon which streets have been laid out by the owners, but not opened or used for twenty-one years, from the servitude imposed. To what extent it may affect the rights of those who by purchase of lots within the tract have acquired the right of the use of all the streets marked in the plan we need not now inquire. We have before us only the question of the right of the municipality to open the streets without compensation by reason of the dedication in 1848. As against this right the act establishes a limitation of time where none before existed. The streets were laid out forty-four years before the commencement of these proceedings. They have not been opened to, or used by, the public......The case, we think, comes within the meaning of the Act of 1889, and it is now too late for the city to assert the right founded upon the dedication of 1848." To the same effect is Woodward v. Pittsburgh, 194 Pa. 193. The decision in Quicksall v. Phila. was followed by Mr. Justice

8  STIVASON *v.* SERENE & SERENE, Appel. (No. 1).

Opinion of the Court.    [80 Pa. Superior Ct.

MESTREZAT in Scott v. Railroad Co., 222 Pa. 634, where the following language was used: "We need not determine the rights of any party who may claim an easement over the land dedicated by DeHaas as Front Street by reason of his being the owner of a lot in the DeHaas plan." We have been referred to no case and have discovered none which holds that the Act of 1889 has the effect of depriving the owner of a lot purchased according to a plan on which streets are plotted by a private owner of his easement of access. Nor could such a property right appurtenant to the land be impaired or taken away without compensation: Chambersburg S. Mfg. Co. v. R. R. Co., 240 Pa. 519. Such a right is entirely distinct from the public right of passage over dedicated streets. This right, founded in the contract of the parties, is not within the power of the original grantor, nor his subsequent grantees to abridge: Carroll v. Asbury, 28 Pa. Superior Ct. 354. Nor can such lot owner by act of assembly be deprived of his easement of access without compensation. The public may accept or reject the easements tendered by the owner of a plan of lots, or having accepted may renounce the public right. The servitude from which the Act of 1889 relieves the land upon which streets have been laid out by the owners is the public use to which the land has been dedicated. Adopting the language of the learned chancellor below which is as follows: "It is quite clear that it (the statute) is not made to tolerate a seizure by some of the purchasers of lots in a plan of some of the streets or the enclosure of them with their property as against the right of others in the plan, and, as we understand it, no statute of limitation runs in favor of either the original owner or those holding under him, which the defendants do in this case, to enable them to get title to the streets and alleys by adverse possession and to enclose them with their land."

The question whether twenty-one years of adverse possession of these streets under a claim of title or color of title gave good title to defendant is academic because the learned chancellor refused to find that defendants held

the part of the streets occupied by them by open, notorious, exclusive, hostile possession for a period of twenty-one years before the filing of the bill. .

The first, second, third and fourth assignments of error complain of the admission of plaintiff's exhibits 1, 2, 3 and 4, which were the original map of lots made by William Stewart in his lifetime and other plans showing the location of the property conveyed to defendants with reference to the streets and alleys which have been closed or obstructed and the location of adjoining properties with reference to Mill Street and First Street.   We think the offers were proper and that the plans were admissible in connection with the testimony to aid the court in understanding the case.   The fifth assignment complains of the refusal of the trial judge to permit defendants to show the condition of the land at the intersection of Third Street and Mill Street for the purpose of showing that no such street as Mill Street ever was or ever could have been opened, accepted and used by the public, and that it was practically impossible to open any such street as Mill Street.   The learned chancellor properly refused to admit this testimony on the ground that it had no bearing upon the question of the location or dedication of the streets involved or whether they had been closed by defendants.   The sixth, seventh, eighth, ninth and tenth assignments relate to the learned chancellor's findings of fact.   Careful examination of the record fails to convince us that the facts found were not fully warranted by the evidence.   The conclusions of law, to which the eleventh, twelfth and thirteenth assignments refer, were inevitable under the facts.   Assignments fourteen to twenty-four inclusive complain of the chancellor's refusal to find certain facts as requested.   We think that the answers to the requests for findings of fact were substantially correct, and that the chancellor in this respect committed no reversible error.

All of the assignments of error are overruled, the decree is affirmed and the appeal dismissed at the cost of appellants.