ISRAEL GROB AND JACOB GROB, CO-PARTNERS, TRADING AS I. GROB & CO., PLAINTIFFS-APPELLEES, v. DAVID GROSS, DEFENDANT-APPELLANT.

Submitted July 5, 1912—Decided November 11, 1912.

1. An instrument reciting that the assignor agreed to pay a company for any amount of flour delivered to B. to any amount to $500 was a continuing guarantee, and did not contemplate merely a single transaction.
2. A continuing guarantee to pay for any amount of flour delivered to another to any amount up to $500 was revocable at any time by the guarantor.
3. A promise by one who had theretofore revoked his guarantee to pay plaintiff for flour furnished another up to a certain amount, to stand by his guarantee, if made after the flour was furnished, was without consideration and unenforceable.

---

On appeal from the Second District Court of Jersey City.

Before Justices SWAYZE, VOORHEES and KALISCH.

For the appellant, *Weller & Lichtenstein.*

For the appellee, *Elgin L. McBurney.*

The opinion of the court was delivered by

KALISCH, J. The plaintiffs obtained a judgment against the defendant for $500 in the Second District Court of Jersey City, the court sitting without a jury.

The trial judge found the facts following:

"I find that on the 23d day of May, 1911, the defendant, David Gross, executed and delivered the following guarantee at the plaintiffs' request, namely:

" 'HOBOKEN, N. J., May 23d, 1911.

" 'I hereby agree to pay to I. Grob & Co. for any amount of flour delivered to Mrs. Rose Bier of No. 114 Willow avenue, Hoboken. N. J., to any amount to $500.00 (five hundred 00/100).

" 'D. GROSS,

" '421 Newark street,

" 'Hoboken, N. J.'

"And that immediately after its execution plaintiffs furnished flour to Rose Bier to the value of $99, and that the defendant then told the plaintiffs to advance no further credit on his said guarantee to Rose Bier. That in August, 1911, defendant promised to pay and said he would live up to his guarantee. Thereafter, disregarding such request, plaintiffs continued to advance credit to Rose Bier from time to time, until the 29th day of July, 1911. Between the time of the signing of the guarantee and the 29th day of July, 1911, plaintiffs sold and delivered to Rose Bier flour as set forth in the bill of particulars annexed to the plaintiffs' state of demand, amounting to $2,168.11, whereon she made payments aggregating $1,669.95, on the days and in the amounts set forth in the credits annexed to the plaintiffs' state of demand, so that at the time action was brought there was due from Rose Bier to the plaintiffs $502.16, and that the excess over $500 was waived by plaintiffs; that by virtue of said guarantee above set forth I find that the defendant, David Gross, is indebted to the plaintiffs in the sum of $500."

It is to be observed that when the defendant made the promise to pay and said he would live up to the agreement

the goods had already been furnished to Mrs. Bier, the last bill sold being July 29th.

At the time the plaintiffs were notified by the defendant not to advance any further credit to Rose Bier on the guarantee, her indebtedness to the plaintiffs was $99 for goods furnished her by them, and which was subsequently paid by her.

The limit of $500 in the guarantee has reference to the amount of the guarantor's liability, and not to the amount of dealing between the purchaser and the one giving credit. The guarantee in question did not contemplate a single transaction.

Under the adjudicated cases of this state the guarantee was a continuing one. *Columbia Electrical Co.* v. *Kemmet,* 38 *Vroom* 18; *Newcomb* v. *Kloeblen,* 48 *Id.* 791.

It is equally clear that the guarantee was revocable.

Speaking of this class of guarantees, Lush, L. J., in *Lloyds* v. *Harper,* 16 *Ch. Div.* 319, says: "Instances of the second class are more familiar. They are where a guarantee is given to secure the balance of a running account at a banker's, or a balance of a running account for goods supplied. There the consideration is supplied from time to time; and it is reasonable to hold, unless the guarantee stipulates to the contrary, that the guarantor may at any time terminate the guarantee. He remains answerable for all the advances made, or all the goods supplied upon his guarantee, before the notice to determine it is given; but at any time he may say, 'I put a stop to this; I do not intend to be answerable any further; therefore do not make any more advances, or supply any more goods, upon my guarantee.' As at present advised, I think it is quite competent for a person to do that where, as I have said, the guarantee is for advances to be made or goods to be supplied, and where nothing is said in the guarantee about how long it is to endure." 20 *Cyc.* 1479, and cases there cited.

The guarantee having been revoked by the defendant, the plaintiffs after notice of such revocation continued to furnish goods to Mrs. Bier, and now seek to hold the defendant

liable because subsequently to the incurred indebtedness it appears that the defendant made a verbal promise to pay and said he would live up to his guarantee.

This promise made, as it was, after the goods had been furnished to Mrs. Bier, was the promise to pay the debt of another and was without any consideration.

The judgment of the District Court will be reversed.