ALFRED MEZZALUNA, RESPONDENT, v. JERSEY MORT-
GAGE AND TITLE GUARANTY COMPANY, APPELLANT.

Submitted May 27, 1932—Decided October 17, 1932.

The case was tried without a jury before Judge Mountain,
who filed the following findings of facts and law:

"On or about February 10th, 1928, the plaintiff was the
holder of the legal title of a certain parcel of land located
at the northeast corner of Chancellor avenue and Cornell
street, in the town of Irvington, Essex county, New Jersey,
upon which premises a four-story apartment house was then
being erected.

"At that time the defendant, a New Jersey corporation,
was carrying on its business pursuant to the provisions of
an act of the New Jersey legislature entitled 'An act to
provide for the regulation and incorporation of insurance
companies and to regulate the transaction of insurance busi-
ness in this state,' approved April 3d, 1902, and the various
acts amendatory thereof and supplemental thereto, and that
the powers granted to it by said statute and by its certificate
of incorporation, were to carry on the kind of insurance
permitted to be transacted by subdivision 8 of section 1 of

the aforesaid act of the legislature of the State of New Jersey, to wit:

" 'Against loss or damage on account of encumbrances upon or defects in title to real property and against loss by reason of the non-payment of principal and interest of bonds and mortgages, and in addition thereto, with its capital and surplus, to take, buy, sell and deal in first mortgages in real estate and to issue bonds, debentures and certificates against said mortgages.'

"On or about the date aforesaid the plaintiff, through a broker, applied to the defendant for a mortgage loan of $165,000. He signed one of the defendant's application blanks applying 'for a guaranteed mortgage loan, * * * secured by first mortgage upon the premises.' He further agreed 'to pay all fees and expenses incurred in the examination or insurance of the title and in connection with the appraisal of the property, and if a construction loan, the fees of the inspectors employed by the company.' It was a construction loan.

"On March 14th, 1928, the broker of the plaintiff was informed by letter from the defendant corporation that its executive committee had approved a loan upon the aforesaid premises for $132,000 to be amortized at the rate of three per cent. a year. This letter informed the broker that if this amount was acceptable to his client, then the latter should forward to the defendant his deed, abstract of title and such other papers as he had in his possession in order that the defendant might proceed with the examination of the title. The plaintiff accepted this offer.

"On March 29th, 1928, the plaintiff signed an affidavit of title in which he deposed, among other things, that he was the owner in fee-simple of the aforesaid property and that the property at that time was unencumbered by any contract for the sale thereof, lease or agreement, easement, encroachment, unrecorded mechanics' lien or any tax or assessment, mortgage, judgment or limitation, except a $12,000 mortgage held by the General Building and Loan Association; second half of 1927 taxes; Cornell street paving and curbing assess-

ment; and building contract with Corrado and Maturi, Incorporated, dated December 29th, 1927. Postponements of any lien were obtained from the general contractor. A bond, secured by a mortgage, was executed by the plaintiff and his wife to the defendant on April 2d, 1928. The mortgage contained a warranty of title.

"The defendant charged the plaintiff $5,940 for examination of the title, in addition to charges for a survey, recording mortgage, recording deed, canceling mortgage, &c., and $100 for inspection fees. As the building progressed payments were made to the general contractor by checks drawn to the plaintiff which he endorsed to the contractor. These payments were made after the defendant had inspected the property, and except in one or two instances, upon the production of architect's certificates. Between the time that the plaintiff signed the mortgage and the last payment was made upon it by the defendant, the plaintiff saw no one connected with the mortgage company.

"The building contract between the plaintiff and Corrado and Maturi which had been filed prior to the execution of the mortgage, did not have attached to it at the time of its filing the specifications referred to in that agreement. The general contractor was paid in full, but he neglected to settle with the following subcontractors for the following amounts of money:

| | |
|---|---|
| George Snyder | $6,682.88 |
| Albert & Kernahan, Inc. | 3,434.22 |
| Branch Iron Works, Inc. | 5,195.22 |
| Pierce, Butler and Pierce | 1,882.84 |

"The three first materialmen above named brought suit under the mcehanics' lien law and recovered judgments in November, 1930. It was agreed that the lien claim filed by the last materialman would not proceed to judgment, but would be treated as a successful lien claimant if the others prevailed. In the three actions which were reduced to judgment, the latter was entered generally against the defendant and especially against the lands and premises aforesaid. These lien claims were paramount to the mortgage held by

the defendant. To save his land from being sold under execution, the plaintiff paid the amount of all judgments and costs to the extent of $17,719.65. In addition to that, he paid or is obligated to pay to Azzoli and Krasny, his lawyers, the sum of $2,500 for services rendered from August 20th, 1928, to December 30th, 1930, in the matter of reducing the four lien claims, which I have mentioned, to judgment. I find this sum is reasonable. Three of these actions were defended. The matter was referred to a referee. Exceptions were taken to his report, and the exceptions were argued before me.

"This action has been brought to recover alleged damages suffered by the plaintiff caused by the negligence of the defendant as revealed in the above facts. It is not an action brought for contract of insurance.

"I find that the defendant, though it made a loan to the plaintiff, charged him for the examination of the title of the premises which was to secure it, and that the plaintiff had requested and believed that he had obtained a first mortgage and relied upon the defendant to place that kind of a mortgage upon the property. I find that the defendant was negligent in not doing so.

### "THE LAW.

"A corporation organized, among other things, for the purpose of loaning its surplus funds upon bonds, secured by mortgages and examining the titles thereto and charging a fee for so doing, assumes to discharge the same duties as an individual conveyancer or attorney and is subject to the same responsibilities. Those responsibilities are set forth in *Jacobsen* v. *Peterson,* 91 *N. J. L.* 404. In 1 *Joyce on Insurance,* § 309-a, we find the following:

" 'A corporation organized for the purpose, among others, of examining and guaranteeing titles to real estate and which in all matters relating to conveyancing and searching titles holds itself out to the public and assumes to discharge the same duties as an individual conveyancer or attorney, has

the same responsibilities and its duty to its employer is governed by the principles applicable to attorney and client.'

"In this case, the defendant was in the business of insuring titles and loaning money on bond and mortgage from its surplus funds. The plaintiff gave no evidence of having any legal knowledge. The defendant is hardly in a position to state that the plaintiff signed an affidavit that the property was unencumbered by an unrecorded mechanics' lien. That was merely a layman's opinion and in his case it was an honest one, and in any event, the company did not rely upon that affidavit but made its own separate examination, I assume, from the fact that it charged almost $6,000 for its services.

"The measure of damages in this case is set forth in the case of Jacobsen v. Peterson, above alluded to.

"Judgment will be entered for the plaintiff and against the defendant, in the sum of $20,219.65."

For the appellant, *Lindabury, Depue & Faulks* (*James E. M. Tams,* of counsel).

For the respondent, *Edward R. McGlynn.*

The opinion of the court was delivered by

PARKER, J. The memorandum by Judge Mountain sufficiently sets out the facts, except perhaps some minor matters which will appear in the course of the discussion.

It will have been noted that the plaintiff owned a tract of land, on which he had begun the building of an apartment house under a contract with a general contractor. The property was known to be subject to unpaid assessments: to a mortgage of less than $12,000; and to possible lien by the contractor. Plaintiff evidently thought no other claim could arise against the property, except, of course, accruing taxes, &c., and liens created by himself. The building contract was in writing and had been filed, and plaintiff, assuming that it had been legally filed, supposed himself and his land immune to claims of laborers, subcontractors and

materialmen, except by way of stop-notice directed to unpaid balance of the contract price. He was in error, because the contract needed specifications to make it complete, and those specifications had not been filed. *Comp. Stat., p.* 3293, § 2. Consequently the property was liable to lien, although plaintiff did not know it. Neither did the defendant; and plaintiff's claim is that as to him, as well as affecting defendant itself and probably the purchasers from defendant of participating bonds based on the proposed mortgage, it was defendant's business and implied if not express undertaking to discover the defect in filing the contract and take suitable precautions to provide against mechanics' liens paramount to the contract—and perhaps paramount to the mortgage to the extent of such proceeds thereof as did not go into the building—by ascertaining the extent of such possible liens and by whom claimed, and withholding the amount thereof from the contractor to insure their payment. The question, and the only question, in the case is whether defendant owed any such duty to the plaintiff. If it did owe such duty, the judgment should be affirmed.

Apart from the fact that there was a somewhat lengthy document signed by plaintiff as an application for the "guaranteed mortgage loan," and containing answers to numerous questions about the property and title, the transaction does not differ in substance from the ordinary construction loan made by a lawyer for a client with funds belonging to that client. It is common knowledge that owners contemplating the erection of a building with borrowed money will defer application for a mortgage loan in order to save interest and until the contract is on file and the building under way. The loan being granted and title approved and mortgage executed and placed upon record, the proceeds of that mortgage become the property of the borrower, subject usually to the fees and expenses of the lender's lawyer for searching the title, &c.; and those proceeds the lawyer disburses as the agent, not only of his client who is lending the money and is entitled to such mortgage lien as contracted for, but also as the agent of the borrower, who has borrowed for a

well-understood object, viz., to clear existing liens, and pay for his new building in such manner as to be protected against other liens not of his own making. In this phase of the matter, the borrower stands as though he had drawn the contract price out of his own balance at the bank and placed it in the custody of the lawyer to disburse to parties legally entitled thereto, and in connection with that duty to make sure that the property is protected against mechanics' liens. In other words, the lawyer, or as in this case the tender acting also as lawyer or title searcher, places the amount of the loan to the credit of the borrower, and is under the obligation to disburse it for the borrower's benefit in paying for the new building. Taking the borrower's fee for so doing, he becomes responsible for due care in that process of disbursement.

We think that the trial judge properly held defendant liable, and the judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.