Rialto Building and Loan Association, Appellant,
*v.* Commonwealth Title Company
of Philadelphia.

94

Argued April 22, 1937.   Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

*James R. Wilson,* with him *L. Arthur Greenstein,* for appellant.

*Philip Werner Amram,* with him *Nathan Silberstein,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE LINN, June 25, 1937:

This appeal is from the refusal to take off a non-suit in an action on a title insurance policy.   There is no evidence that the title to the lots is not clear.   The parties differ about the meaning of the policy as related to Wakefield Street, formerly called Garden Terrace, shown on a plan and used as a boundary in the description of the lots conveyed.   Plaintiff contends that the policy insures "a marketable title to two lots situate on Wakefield Street (40 feet wide) as a public street," and finds it necessary to use the words "public street" to de-

scribe its contention; the words are not in the policy which presents no difficulty of construction as drawn.

An account of the plotted street will be of assistance. A District Surveyor's plan dated March 3, 1925, entitled, "Plan of lots made for S. Perlman, 22nd Ward, Philadelphia," is in evidence. Some of these lots front on Louden Street, some on Stenton Avenue, others on Garden Terrace which divides the two groups of lots, those abutting on one side of the street from those on the other. In Stenton Avenue appeared the words "Legally and Physically Open"; within the lines of Louden Street the words were "Not Open or Dedicated"; "On City Plan but not Physically or Legally Open"; within the lines of Garden Terrace the words were "Proposed St. Not on City Plan Not Open." Altogether some 70 lots of ground were laid off with dimensions, etc., specified. There is also a later District Surveyor's plan dated June 30, 1927. On it Louden Street is marked "On City Plan but not Physically or Legally Open"; Stenton Avenue is marked "Legally and Physically Open." What on the former plan was Garden Terrace (with a slight variation at one end not material to the point for decision) is called Wakefield Street on this plan and within the lines of the street appear the words "Not on City Plan Not Open."

Now for the conveyances made with regard to the plans. January 20, 1926, Perlman, owning the entire tract, which was vacant ground, made a mortgage to one Moss, describing as one tract all the lots on the west side of Garden Terrace and, as another tract, all the lots adjacent to the east side of it. In the mortgage to Moss the tracts were designated "according to a Survey and Plan thereof made March 3, 1925" by the District Surveyor.[1] One of the tracts was described as extending

---

[1] On the powers and duties of the District Surveyor see *Pennsylvania Laundry Co. v. Land Title, etc., Co.,* 74 Pa. Superior Ct. 329, 334, et seq.

from the side of Louden Street to and along the east side of Garden Terrace, and the other as extending along the north and west sides of Garden Terrace. This mortgage was foreclosed in 1927 and the property bought by one Jones. Jones conveyed to Adelman. Meanwhile, on May 19, 1926, between the date of the mortgage and the foreclosure, a judgment was entered against Perlman which, it is said, became a lien on Perlman's interest in the bed of Garden Terrace as plotted. So far as appears, this judgment did not affect adversely the easement in the plotted streets vested by the prior mortgage. On August 4, 1926, Perlman made a formal deed of dedication to the city of the bed of the street now designated Wakefield Street as laid out on the plan of June 30, 1927. This deed was accepted by the Board of Surveyors on November 21, 1927.[2] Adelman, who purchased from Jones, mortgaged the same two tracts to plaintiff, again describing them as extending along the sides of the streets plotted on the plans. This mortgage was foreclosed in 1929 and plaintiff became the purchaser; it then sold them to Friedman and took a mortgage from him; it is in this transaction that defendant issued the policy of title insurance now in suit, plaintiff having become owner by purchase at the foreclosure of the mortgage held by it.

Friedman's mortgage to the plaintiff also described[3]

---

[2] At one end the description of Wakefield Street differed slightly from what had formerly been called Garden Terrace, but, as stated above, the difference is immaterial to the legal question involved.

[3] "ONE THEREOF BEGINNING at a point on the North side of Louden Street (sixty feet wide) at the distance of fifty seven feet four and one half inches Westward from the west side of Stenton Avenue (fifty feet wide), thence extending North seventy eight degrees thirty nine minutes West along the North side of said Louden Street fifty feet three and seven eighths inches to a point on the east side of Wakefield Street (forty feet wide) thence extending North four degrees forty eight minutes fifty two seconds east along the east side of said Wakefield Street three

the premises "according to a survey and plan thereof made by John T. Campbell, Esq., Surveyor and Regulator of the Ninth Survey District of Philadelphia. Dated June 30, 1927," the plan mentioned above.

While the bed of Wakefield Street was not included within the land mortgaged, the mortgagees and those claiming under them acquired an easement over the land within the street lines plotted on the plan[4]: see *Ott v. Kreiter,* 110 Pa. 370, 378, 1 A. 724; *Cole v. Philadelphia,* 199 Pa. 464, 49 A. 308; *O'Donnell v. Pittsburgh,* 234 Pa.

---

hundred twenty two feet and one quarter inch to a point an angle to said Wakefield Street, thence extending north fifty four degrees fifty two minutes two seconds east along the southeast side of said Wakefield Street sixty five feet two and three quarter inches to a point on the west side of a certain three feet wide alley extending southward from Wakefield Street to Louden Street, thence extending south four degrees forty eight minutes fifty two seconds west along the west side of said alley three hundred sixty nine feet seven and one half inch to the first mentioned point and place of beginning.

"AND THE OTHER ONE THEREOF BEGINNING. . . ."

[4] On this subject the learned court below said: "The mere making of the plan does not constitute a complete dedication, and the plan may be changed or abandoned, provided the rights of the public or of third parties have not in the meantime intervened: *Bell v. Pittsburgh Steel Co.,* supra. In the present case the description in the mortgage covered two lots or parcels of ground (A. & B.) separated by a street referred to as Garden Terrace [now Wakefield Street]. Garden Terrace was clearly intended to be a street, for otherwise there would have been no outlets to A. & B. except the narrow frontages on Louden Street and Stenton Avenue. A. & B. are not wide enough to accommodate 40 foot streets within their boundaries. Moreover, the mortgage includes all 'Streets, Alleys, Passages, Ways—and Appurtenances, thereunto belonging or in any wise appertaining.' By the execution of the mortgage, rights of third parties accrued in Garden Terrace as a street, and under the case above cited, the Perlmans [who adopted or made the plan] impliedly at least covenanted that that street should be opened and remain open forever for use and convenience of the lot owners and to the public as a necessary incident to the use by the lot owners."

401, 83 A. 314; *Stoever v. Gowen*, 280 Pa. 424, 432, 124 A. 684; *Gailey v. Wilkinsburg Real Est. & T. Co.*, 283 Pa. 381, 129 A. 445; *Stivason v. Serene*, 80 Pa. Superior Ct. 1. Compare *Neely v. Philadelphia*, 212 Pa. 551, 557, 61 A. 1096; *Tesson v. Porter Co.*, 238 Pa. 504, 86 A. 278; *Bell v. Pittsburgh Steel Co.*, 243 Pa. 83, 89 A. 813; *Phila. Storage Battery Co. v. Philadelphia*, 323 Pa. 17, 186 A. 103. From the time of the mortgage to Moss, Perlman,[5] the mortgagor, had imposed an easement in favor of the owners of the lots abutting on the land within the bed of Wakefield Street as plotted.

The policy of insurance states that defendant "Does Hereby Insure the said [plaintiff] . . . that the title of the Insured to the estate, mortgage, or interest described in Schedule A hereto annexed, is good and marketable and clear of all liens and incumbrances, charging the same at the date of this policy, saving such estates, defects, objections, liens and incumbrances recited in the instrument referred to in Schedule A, or as may be set forth in Schedule B, or as may be excepted by the conditions of this Policy hereto annexed and hereby incorporated into this contract."

The undertaking of the insurer is limited by Schedule A in the following words: "1. The Estate or Interest of the Insured covered by this policy. Mortgagee. 2. Description of the Property, the title to which is insured. Philadelphia, Pa. 1. North side of Louden St. 57 ft. 4½ ins. West of Stenton Ave. etc. as in Mortgage Insured. 2. North side of Louden St. 147 ft. 11½ ins. West of Stenton Ave. etc. as in Mortgage Insured. 3.

---

[5] As showing the extent to which Perlman's plan of lots and plotted streets was involved, it may be noted that on August 17, 1926, during the period when the premises were subject to the lien of the mortgage to Moss, Perlman sold 37 lots to one Jenner, whose title was divested by the Perlman mortgage foreclosure. In 1932 there was a sheriff's sale on the judgment against Perlman of May 19, 1926, and the bed of Garden Terrace as formerly plotted was sold to one Berman.

The Deed or other means by which title is vested in the Insured. Mortgage of $14,000. Leon C. Friedman to Insured. Dated March 24, 1930. Recorded April 1, 1930."

The exceptions referred to are thus stated in Schedule B: "Estates, Defects, or Objections to Title, and Liens, Charges, or Incumbrances Thereon, which do or may now Exist, and against which the Company does not agree to insure, . . . 3. No Water pipe in any Bounding Streets. 4. No record of sewers in Wakefield St. Louden St. and Stenton Ave. 5. This Company assumes no liability for any assessments for sewers, public or private or for any assessment for future Street Improvements. 6. Easement of alleys. 7. Vacant Grounds. 8. Streets not physically opened. 9. No Improvements."

The risks incident to the exceptions in Schedule B were expressly excepted from the insurance; the fact that Wakefield Street, the boundary street, was "not physically open" was excepted. The physical relation of the two tracts to specified street lines and the easement over the plotted street is not questioned. The information on the plans, taken with the description of the premises in the title papers, shows that Wakefield Street was not a public street in the sense that plaintiff obtained anything more than the easement resulting from the terms of the plans and deeds; if, as plaintiff suggests, such easement may with propriety be called a "public street," plaintiff has suffered no diminution of the right to use what it so designates. The street appears on the plans 40 feet wide and measures the width of the ground over which the easement may be enjoyed; if, as is suggested in plaintiff's argument, the formal deed of dedication to the city failed of its purpose, that does not diminish the easement theretofore vested: see *Gailey v. Wilkinsburg Real Estate & T. Co.,* 283 Pa. 381, 129 A. 445; *Stoever v. Gowen,* 280 Pa. 424, 124 A. 684; *Lang v. Smith,* 113 Pa. Superior Ct. 559, 173 A. 682.

The judgment under which Berman bought was subsequent to the creation of the easement which appeared in the recorded paper and was necessarily subject to it.

Judgment affirmed.