66 N.J. Super. 597 (1961)
169 A.2d 735
LEWIS N. SANDLER AND RICHARD M. SANDLER, PLAINTIFFS,
v.
NEW JERSEY REALTY TITLE INSURANCE COMPANY, AN INSURANCE CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 30, 1961.
*598 Mr. Alan V. Lowenstein, attorney for plaintiffs.
Messrs. Gassert, Murphy & Gassert, attorneys for defendant (Mr. Thomas S. Murphy, appearing).
LABRECQUE, J.S.C.
This matter comes on before me on the defendant's motion to dismiss the complaint, or in the alternative for a summary judgment for defendant on the ground that there is no genuine issue of any material fact, and that the defendant is entitled to judgment as a matter of law. Plaintiff has filed a cross-motion for summary *599 judgment as to the issue of liability on the first count. By subsequent stipulation, there being agreement as to the facts, the case was submitted for final determination.
The plaintiffs are children and sole beneficiaries of the late Maurice Sandler. They are also his sole executors, although they do not sue as such. On July 25, 1946 the defendant, New Jersey Realty Title Insurance Company, issued to Maurice Sandler a policy of title insurance in the amount of $10,000 covering certain premises located in the Township of Springfield, Union County, New Jersey. On December 20, 1946 Sandler conveyed the premises in question to Richard Sandler Realty Co., Inc., a body corporate of the State of New Jersey, by bargain and sale deed. No notice was given to the defendant of this transfer of title and no application for title insurance was ever made on behalf of the corporation. On December 29, 1950 Richard Sandler Realty Co., Inc. reconveyed the identical premises to Maurice Sandler. On January 2, 1951 he, in turn, conveyed to the plaintiff, Richard M. Sandler, by bargain and sale deed, an undivided one-third interest in the premises. At the same time he conveyed to the plaintiff, Lewis N. Sandler, an undivided one-third interest therein. Maurice Sandler died on January 22, 1955 seized of the remaining undivided one-third interest in the premises. Under his last will and testament, which was duly probated, his undivided one-third interest was devised as part of his residuary estate to his sons, the plaintiffs herein.
On October 31, 1956 the plaintiffs and their respective wives contracted to sell approximately 5,000 square feet of the premises covered by the title policy. Thereafter an adverse claim was filed and the plaintiffs requested the defendant to remove the cloud from plaintiffs' title. Defendant denied liability. Thereafter the plaintiffs and their wives entered into a supplemental agreement with the purchaser substituting an alternative parcel which was conveyed for a consideration of $20,000. Examination of the title revealed that Maurice Sandler had not owned title to two *600 of the tracts embraced in the description contained in the title insurance policy.
The first count of the complaint seeks recovery by way of indemnification under the policy. The second count seeks damages for negligence in making the search.
Defendant's contentions may be briefly summarized as follows:
(1) Plaintiffs were not insured and were thus not entitled to indemnification under the policy.
(2) The policy was not assignable or negotiable and thus terminated and expired upon the initial transfer of title from Sandler.
(3) Defendant owed no duty to the plaintiffs and hence is not responsible for loss or damage by reason of negligence.
Certain additional facts appear in the case by stipulation: Maurice Sandler was the beneficial owner of 100% of the capital stock in Richard Sandler Realty Co., Inc., to which he conveyed the subject premises, and the conveyance to the corporation was a capital contribution to that corporation. The market value of that portion of the property originally purchased and insured by the defendant for which the plaintiffs herein seek damages by virtue of title defects was $30,000, but the damages, if any, which the plaintiffs may recover from defendant are limited to the policy limit of $10,000.
The Richard Sandler Realty Co., Inc. was dissolved on December 31, 1950.
The title policy in question contained a clause reading as follows:
"That it will indemnify, keep harmless and insure Maurice Sandler hereinafter called Party Insured, and the person or persons upon whom the insured estate or interest devolves from the Party Insured by descent, devise, bequest or the laws governing intestacy, and all persons or corporations to whom this policy of title insurance may be transferred as provided in the conditions hereof with the assent of the Company, testified by the signature of its properly authorized officer endorsed thereon, from all loss or damage not exceeding the sum of Ten Thousand Dollars which the Party Insured *601 shall sustain by reason of defects in or unmarketability of the title of the Party Insured to the estate or interest described in Schedule A * * * The obligation and liability of the Company hereunder shall be limited to and established in the manner provided by, and the amount of loss and damage sustained by the Party Insured hereunder shall be ascertained in accordance with, the scope and conditions of this policy of title insurance which are annexed to, incorporated in and made part of this contract, and not otherwise."
Under the section of the policy entitled "Scope and Conditions of this Policy of Title Insurance," the following provision was set forth:
"This policy may be transferred to a mortgage of the estate or interest insured and to an assignee of said mortgagee with the consent of the Company endorsed on this policy, provided, however, that no transfer shall alter the character or extent of the original liability of the Company under this policy. All liability of the Company under this policy, except for damages accrued, shall cease by the transfer thereof without such consent so endorsed. The liability of the Company to any collateral holder of this policy shall in no case exceed the amount of the pecuniary interest of said collateral holder in the premises insured by this policy. The transfer fee for assigning a policy shall be five dollars."
The policy contained another provision regarding sales and mortgages of the premises as follows:
"Whenever the party insured shall sell or mortgage any or all of the estate or interest insured by this policy and application is made for title insurance for the grantee or mortgagee of the party insured, then if the risk be again accepted by the Company, premium will be charged at the reduced rate then current and in effect in the Company for reissue title insurance to the amount of this policy, and at the Company's regular premium rates then in effect on any amount in excess of the amount of this policy."
On the back of the policy was endorsed the following:
"Policies are not assignable to grantees (purchasers) but only to mortgagees of insured or assignees of mortgagees are hereinbefore provided. Purchasers should protect themselves by obtaining Policy of title insurance at reduced re-issue rates as provided in this Policy. Corporate assignors must execute assignment by their authorized officers with corporate seal affixed."
*602 It is undisputed that no notice was given to the defendant of the transfer from Maurice Sandler to the corporation, nor was any notice given of the retransfer. Likewise, no notice was given of the conveyance to the two sons, the plaintiffs herein. No additional fee was paid and there was no consent to the transfer.
Defendant's motion for summary judgment on the first count of the complaint is premised upon its contention that the conveyance from the insured to Richard Sandler Realty Co., Inc. on December 20, 1946 terminated its obligation under the policy to the insured and his devisees. Any rights which Sandler acquired through the subsequent reconveyance of the property to him on December 29, 1950 were those of a subsequent purchaser, i.e., the right to obtain coverage upon the payment of an additional premium, as provided for in paragraph 12 of the policy. Since no additional premium was ever paid, there could be no liability.
Plaintiffs concede that had there been a loss during the period of ownership by the corporation, the defendant could not have been held liable. They urge however that upon the reconveyance to the insured, the obligation of defendant was reinstated. They also urge that their rights under the policy were not forfeited by the transfer to the corporation since it was wholly owned by the insured and upon its dissolution its assets were retransferred to him.
The contract here in question was one of indemnity, issued to protect the parties insured from loss or damage sustained. Booth v. New Jersey Highway Authority, 60 N.J. Super. 534 (Law Div. 1960); Westville Land Company v. Handle, 112 N.J.L. 447 (Sup. Ct. 1934). In construing the contract, we may not enlarge or restrict the normal usage of the tokens of intention contained in the contract, except as it may be reasonably necessary to serve its general design and purpose. The intention of the parties is to be gleaned from the contract itself. Gusaeff v. John Hancock Mutual Life Insurance Co., 118 N.J.L. 364 (Sup. Ct. 1937); George M. Brewster and Son v. Calalylic *603 Construction Co., 17 N.J. 20 (1954). When the terms of an insurance contract are clear, it is the function of the court to enforce it as written and not to make a better contract for either party. Kupfersmith v. Delaware Insurance Company, 84 N.J.L. 271, 45 L.R.A. (N.S.) 847 (E. & A. 1913). In the event of ambiguity, such ambiguity is generally construed against the company which prepared the policy and in such a manner as to avoid a forfeiture. Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599, 605 (App. Div. 1956).
It is urged by the defendant that the transfer of title by the insured terminated the policy and rendered it void. An examination of the policy itself fails to support this contention. On the contrary, the policy inferentially permitted transfer of the premises by offering to write new insurance for the transferee at reduced rates and by providing for continued liability where there was a transfer with covenants or warranties. While paragraph 11 provides that all liability under the policy, except for damages accrued, shall cease upon transfer without consent of the company, it refers to transfers of the policy and not of the premises, and it is confined to transfers to a mortgagee, where the continued liability of the company is to be predicated upon notice and approval of the assignment.
In the absence of any assignment of the policy the company's liability extended only to those designated as insureds under the contract. These were Maurice Sandler, the owner, and the persons upon whom his estate or interest devolved under his will, i.e., the plaintiffs herein. As to these, no transfer or assignment of the policy was necessary in order to render the defendant liable. We therefore come to the consideration of the effect of Sandler's transfer and reacquisition of title upon its liability to the present plaintiffs.
Plaintiffs urge that upon the conveyance by Sandler to the corporation in 1946 the defendant's liability was suspended only, and that it was revived by the reconveyance *604 of the same property to him in 1950. They thus seek to invoke the doctrine of suspension and revival. 5 Couch, Cyclopedia of Insurance Law, sec. 991, pp. 3494-3495 (1929), and cases there cited; 4 Appleman, Insurance Law and Practice, sec. 2785, p. 711 (1941); Germania Fire Ins. Co. v. Turley, 167 Ky. 57, 179 S.W. 1059 (Ct. App. 1915). Cf. Annotation 52 A.L.R. 843 (1928).
The doctrine of suspension and revival has been followed by a majority of American jurisdictions. It has not, however, been adopted by our courts of last resort. It was inferentially rejected in Vozne v. Springfield Fire Insurance Co., 115 N.J.L. 449 (E. & A. 1935), and Polleck v. Home Insurance Co. of N.Y., 121 N.J.L. 52 (E. & A. 1938). In both of the above a policy condition was violated when the insured did not have an unencumbered title at the time of issuance, although the defect had been cured by the time the loss had occurred. In each case, however, a provision of the policy rendered it void ab initio, and recovery seems to have been denied on the theory the policies were voided by the breach itself, without consideration as to whether the insurer had in fact been prejudiced.
But in Bradley v. Atlantic Guarantee & Title Insurance Company, 98 N.J.L. 34 (Sup. Ct. 1922), affirmed 98 N.J.L. 741 (E. & A. 1923), substantially the same result was reached. There title policies had been issued by the defendant covering two bonds and mortgages. Dick assigned the mortgages to one Howard without assigning the title policies. Thereafter, by reason of the discovery of a prior encumbrance which was in the process of foreclosure, proceedings were instituted by Howard to rescind his purchase of the mortgages. Under the terms of the final decree, foreclosure under the prior mortgage (which Dick also held) was permitted, but Dick was permitted to take a reassignment of the foreclosure decree into which the two mortgages had merged by reason of the foreclosure. Subsequent to the foreclosure sale, Dick brought suit to recover the balance due on his mortgages from the title insurance company. *605 The company set up the defense that it was not liable by reason of the assignment of the mortgages to Howard. The policy limited assignability to those who gave notice of the mortgage assignments and proof of ownership to the company. There had been no assignment of the policies and no other notice given to the company. The Supreme Court held that Dick could not recover since the company had not been notified and thus, by the reassignment to him, he took only Howard's title to the mortgages. The Court of Errors and Appeals in unanimously affirming held:
"The Supreme Court affirmed the trial judge's direction of a verdict for defendant, because the guaranties provided that the defendant company should not be liable if the mortgages were assigned, unless it had notice and consented, and it was required to consent if it had notice, but it was never notified. We hold that when title to the mortgages was divested out of Dick without the guarantees having followed it by notice of the assignment and consent of the guarantor under the contract, the guaranty terminated, and could only have been revived by the reassignment to Dick through the guarantor consenting thereto for a consideration, which was not done. See Grob v. Gross, 83 N.J.L. 430."
Bradley v. Atlantic Guarantee & Title Insurance Company was followed in Schoeneman v. Bloom, 106 N.J. Eq. 421 (Ch. 1930). In that case the policy provided that in the event of an assignment of the mortgage, upon notice being given to it, the title company would transfer the policy to the assignee. The notice, however, was never given and the name of the beneficiary was never changed on the policy. The court held that by reason of the assignment and the failure to change the name of the beneficiary, the policy became of no effect and the guarantee terminated and could not be revived unless the guarantor consented thereto for a consideration. Cf. Bess Holding Corporation v. Importers and Exporters Insurance Company of New York, 12 N.J. Misc. 119 (Sup. Ct. 1933) and Weinberger v. Agricultural Insurance Company of Watertown, New York, 80 N.J.L. 202 (Sup. Ct. 1910).
*606 It would therefore appear that notwithstanding the basic equities in its favor, our courts have not yet adopted the doctrine of suspension and revival which plaintiff seeks to invoke. Thus, upon the transfer of the property in question by Sandler to the Richard Sandler Realty Company, Inc., the liability of the defendant under the policy was terminated and could not be reinstated without its consent. Upon reacquiring the property some four years later, Sandler acquired no greater rights than the corporation to which he had conveyed the land.
No case is cited and none has been found to support the plaintiffs' contention that the transfer of the property to the corporation as a capital contribution should be considered as differing from a sale or transfer thereof. By it the grantor fulfilled an obligation imposed by law upon corporate stockholders and officers. R.S. 14:8-13, R.S. 14:8-16, as amended. He thus avoided personal liability as a stockholder for the corporation's debts. Merola v. Fair Lawn Newspaper Printing Corp., 135 N.J. Eq. 152 (E. & A. 1944), and avoided liability as an officer for failure to file the certificate of paid in corporate stock required by statute. Sylvania Electric Products Inc. v. Fulmer, 47 N.J. Super. 444 (Ch. Div. 1957).
It follows, therefore, that plaintiffs' motion should be denied and that judgment should be entered in favor of the defendant on the first count.
Under the second count the plaintiffs seek to recover for the negligence of the defendant in making the search which failed to reveal the defect in title. It appears that the examination and report on the title was a transaction separate from the guarantee of title and that a separate charge was made therefor. Had the search been made by Sandler's personal attorney, there is no question but there would have been liability for negligence. Bayerl v. Smyth, 117 N.J.L. 412 (E. & A. 1937). A corporation organized for the purpose of examining titles to real estate, which assumes to discharge the same duties as an individual *607 attorney, has the same responsibilities, and its duty to its employer is governed by the principles applicable to attorney and client. Mezzaluna v. Jersey Mortgage and Title Guarantee Company, 109 N.J.L. 340 (E. & A. 1932). The case of Booth v. New Jersey Highway Authority, 60 N.J. Super. 534 (Law Div. 1960), is distinguishable since the suit was based upon a title insurance policy, not upon a negligent title examination.
The contract to make the title examination was with Max M. Albach, an attorney at law, who was acting as the agent of Maurice Sandler at the time. Any action for the negligent performance of this contract by the defendant would accrue only to Sandler or his personal representatives, and the individual plaintiffs can take no benefit thereby. Marvin Safe Co. v. Ward, 46 N.J.L. 19 (Sup. Ct. 1884); Bacak v. Hogya, 4 N.J. 417 (1950). Since the plaintiffs are also the executors of his estate, leave has been requested to file an amended complaint with Lewis N. Sandler and Richard M. Sandler, executors of the estate of Maurice Sandler, deceased, as additional plaintiffs. Such leave is granted provided the amended complaint is filed within ten days. Defendant is given leave to file an amended answer within 20 days thereafter setting up such defenses as it may be advised.
An order may be presented in accordance with these conclusions.