169 N.J. Super. 502 (1979)
405 A.2d 405
CATHERINE MacBEAN AND SCOTT J. MacBEAN, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
ST. PAUL TITLE INSURANCE CORPORATION, A MISSOURI CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1979.
Decided July 11, 1979.
*503 Before Judges CONFORD, PRESSLER and KING.
Mr. Lawrence Wolfberg argued the cause for appellant (Messrs. Wolfberg & Wolfberg, attorneys).
Mr. William J. McMahon, Jr. argued the cause for respondents (Messrs. Josephs & McMahon, attorneys).
The opinion of the court was delivered by KING, J.A.D.
Plaintiffs Scott and Catherine MacBean, husband and wife, contracted to purchase a one-story frame dwelling located on a lot in the Township of Dover for $24,000 in early April 1973. Plaintiffs obtained a survey of the subject property which was performed on April 12, 1973 by Clymer and Associates, licensed land surveyors of this State. A copy of the survey is attached to this opinion. The metes and bounds description was as follows:
BEGINNING at a point in the Westerly line of Warren Street, said point being 1300 feet on a course South 11 degrees 35 minutes West from a concrete monument at the Southwesterly corner of said Warren Street and Bay Avenue; thence running as the Magnetic *504 Needle pointed in the year 1950, along the Westerly line of said Warren Street
(1) South 11 degrees 35 minutes West 100.00 feet to a point in the Southerly line of the whole tract;
(2) North 77 degrees 54 minutes West 100 feet to a point in said Southerly line of the whole tract;
(3) North 11 degrees 35 minutes East 100.00 feet to a point;
(4) South 77 degrees 48 minutes East 100 feet to the place of BEGINNING.
The survey contained the following certification:
I certify that this survey has been made under my immediate supervision and that it is correct, as per record description, and that there are no encroachments either way across the property lines, except as shown.
The survey clearly indicated a purported public street denominated "Delaware Ave.," 50 feet in width and running in a east-west direction, upon which the subject parcel abutted and the house fronted. However, it is to be noted that "Delaware Ave," was not mentioned in the quoted metes and bounds description.
It is undisputed that plaintiffs fully intended to and did use "Delaware Ave." for ingress and egress to the front of their residence by concrete walkway and driveway. The subject parcel was bounded on the east side by Warren Avenue, a paved and dedicated street. That portion of "Delaware Ave." directly abutting the subject parcel and to the north of it was unpaved and uncurbed to the west of the intersection of "Delaware Ave." and Warren Avenue, according to plaintiffs' counsel's representation at oral argument. Counsel also represented that "Delaware Ave." was paved and otherwise improved for the five or six blocks it extended east of the intersection. The unpaved portion of "Delaware Ave." terminated at the westerly property line of the subject parcel. Plaintiffs' property was thus located at the southwest corner of the ostensible intersection.
*505 The closing took place on May 3, 1973. On that date defendant insurance company issued to plaintiffs a title insurance policy on their property in the face amount of $24,000. The policy specifically insured against:
(1) Title to the estate or interest * * * being vested otherwise than as stated in the policy;
(2) Any defect in or lien or encumbrance on such title;
(3) Lack of a right to access to and from the land; or
(4) Unmarketability of such title.
The printed form policy also contained the following exclusionary language under Schedule B:
This policy does not insure against loss or damage by reason of the following:

*********
3. Survey: Any encroachments, measurements, party walls, or other facts which a correct survey of the premises would show.
This particular exclusion from coverage was thereafter expressly omitted by typewritten addendum as follows:
(7) Item No. 3 of Schedule "B" is omitted in its entirety.
And the following typewritten provision was next set forth:
(8) Survey made by Robert Towns Clymer & Associates, L.L.S., dated April 12, 1973, shows clear.
The survey was thus incorporated by reference into the title policy; the record is unclear as to whether it was physically attached thereto as well.
On October 30, 1975 plaintiffs were first advised, by letter from the Dover Township Engineer, that "Delaware Ave." west of Warren Avenue was not a public street but a privately-owned lot. Thereafter, a one-family residence was built facing Warren Avenue on that portion of the purported "Delaware Ave." shown on the survey as abutting plaintiffs' property to the north. Thus, the front of plaintiffs' dwelling faces *506 the side of this newly constructed residence, allegedly virtually curtailing plaintiffs' free access to the front of their home and diminishing the value of plaintiffs' property. Plaintiffs have access only to Warren Avenue on the east side of their property.
After plaintiff's efforts to locate and obtain satisfaction from the surveyor failed, they turned to defendant, their title insurance carrier. Their claim was rejected and this suit was commenced. The trial judge granted summary judgment for plaintiffs on the issue of liability on the above-recited undisputed facts, on the ground that the policy insured the survey, including the representation therein that "Delaware Ave." in fact existed as a public street abutting plaintiffs' property to the north. Defendant title insurance company appeals the grant of summary judgment to plaintiffs on the issue of liability. Although the appeal is not from a final judgment, we grant leave to appeal nunc pro tunc from the interlocutory order of the trial court.
Initially, we stress that this case does not require an analysis of whether the surveyor, who is not a party, would be liable to plaintiffs for misrepresenting the existence of an abutting street. The present claim under the title insurance policy does not turn on the question of the surveyor's liability. Nor do we suggest that the title insurer in all cases necessarily underwrites the surveyor's liability.[1]
The only comparable cases disclosed by our research have denied the liability of the title insurer where through error the property description misdescribed or misrepresented a boundary street. Shaver v. Title Guar. & Trust Co., 163 Tenn. 232, 43 S.W.2d 212 (Sup.Ct. 1931); Schaible v. Louisville Title Ins. Co., 118 Ohio App. 328, 194 N.E.2d 588 (Ct.App. 1963); see also, Rialto B. & L. Ass'n v. Commonwealth Title Co., 327 Pa. 93, 192 A. 635 (Sup.Ct. 1937). *507 The courts in these cases proceeded on a strict real property analysis in denying coverage, reasoning that since the grantor neither represented owning nor owned any interest in the purported abutting street, there was no title defect and hence no liability. The title insurer's liability was concluded to be limited to the metes and bounds description and any encroachment thereon.
We regard this case as more appropriately considered from the perspective of a claim under an insurance policy rather than from that of a real property dispute. Plaintiffs-insureds purchased a policy expressly insuring (1) title vested as stated, (2) against defects, liens or encumbrances, (3) access[2] and (4) marketability. The policy specifically excluded coverage for a survey under exclusion number 3 of Schedule B. By typewritten addendum number 7 thereof the insurance company expressly "omitted" the survey exclusion. By further typewritten addendum number 8 the company stated that the survey "shows clear." Reading the entirety of the collection of items under Schedule B, particularly 3, 7 and 8, we conclude that the fair expectation of the purchaser of the insurance would be that item 8 constitutes an affirmative insuring agreement that the Clymer survey "shows clear." We therefore reject defendant's contention that addendum 8 was intended to be an item of exclusion rather than inclusion.
We hold that under our law the insurance company's liability is here governed by the reasonable expectation of an average lay purchaser of insurance. This standard has evolved from cases decided by our Supreme Court in which the insurance policy was ambiguous, either as drafted or as applicable to a particular factual setting. In the present case we conclude that the policy as drafted, with the typewritten addendum inserted by the carrier, is ambiguous. The policy *508 by form language excluded the "survey"  described as "any encroachments, measurements, or other facts which a correct survey of the premises would show." (Emphasis supplied). The carrier then proceeded to "omit," in its own language, the survey exclusion and reassure the reader that the survey "shows clear."
Whether a reasonable insured could reasonably expect that the coverage extended by the title policy therefore included insurance that the survey accurately depicted the abutting streets as an "other fact" which a correct survey would disclose is a question for the trier of fact under these circumstances. We hold that the policy was ambiguous as to the extent to which the contents of the survey were insured and that the availability of coverage is thus to be determined by the trier of fact applying the reasonable expectation doctrine.
The "reasonable expectation" doctrine was expressed by Justice Jacobs in Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475 (1961) thusly:
When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow." Francis, J., in Danek v. Hommer, 28 N.J. Super. 68, 76 (App. Div. 1953), affirmed, 15 N.J. 573 (1954). [at 482]
This doctrine has been specifically applied to title insurance policies. Sandler v. N.J. Title Ins. Co., 36 N.J. 471, 479 (1962). The "reasonable expectation" principle applies to "misleading terms and conditions of insurance contracts and [to] genuine ambiguities." Where the language is clear, the doctrine does not apply. DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269 (1979). Nor does the doctrine apply in disputes between insurance professionals. Fenwick Machinery Inc. v. American Ins. Co., 79 N.J. 590, 591-592 (1979).
*509 Defendant-carrier, as draftsman, could have articulately limited its exposure under the "omission" of the survey exclusion but did not do so. For example, it could have insured the record description and against encroachments only, as the surveyor attempted to so limit his liability in the certificate. In the absence of a clear, precise description of its undertaking in respect of the insured survey, the carrier is subject to the "reasonable expectations" doctrine developed by the above-cited cases.
The issue of the carrier's liability under the reasonable expectations doctrine was for the trier of fact under all of the circumstances. In our view, a finder of fact could fairly conclude that a reasonable purchaser of insurance would understand that a survey, described in the policy as "showing clear," and indicating a street abutting one of the boundary lines of his property, had been certified to him by the insurer as showing that street to be a dedicated public street. Since the judgment of the trial court essentially constituted such a finding we affirm the interlocutory judgment of liability and remand for trial of the remaining issues in this case.
*510 
NOTES
[1] For cases involving surveyor's malpractice, see Annotation, "Surveyor's liability for mistake in, or misrepresentation as to accuracy of survey of real property," 35 A.L.R.3d 504 (1971).
[2] Insofar as plaintiffs' contentions on appeal are based on a claim that they are denied access to the property, that claim is rejected. Plaintiffs have adequate access from Warren Avenue.