GLEN A. HEYD AND ROBIN L. HEYD, APPELLANTS, V. CHICAGO TITLE INSURANCE COMPANY, APPELLEE.

354 N.W.2d 154

Filed August 10, 1984.   No. 83-547.

Michael Lehan, for appellants.

Joseph Polack of Polack & Woolley, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Glen and Robin Heyd sued Chicago Title Insurance Company (Chicago) in two causes of action. Heyds' first cause of action relates to a loss claimed to be covered under Chicago's policy of title insurance, while Heyds' second cause of action alleges negligence regarding a title report prepared by Chicago. The district court for Douglas County sustained Chicago's demurrer, held that the pleadings could not be amended to state a cause of action, and dismissed Heyds' lawsuit. We affirm in part and reverse in part.

In July 1978 Heyds contracted to purchase a home located on a lot designated as 5939 South 46th Street in Omaha, Nebraska. The seller was Gladys Smith. Heyds obtained a policy of title insurance from Chicago regarding the real estate being purchased from Smith. It was later discovered that the house being purchased was not entirely located within the boundaries of the tract described in the Smith-Heyd real estate contract. The house was in fact partially located on a public street of the city of Omaha.

The policy of title insurance issued by Chicago insures against any loss or damage by reason of "title to the [real] estate . . . being vested [in one other than Smith]; any defect in or lien or encumbrance on such title; lack of a right of access to and from the land; or unmarketability of such title." The policy continues: "The estate or interest in the land described herein and which is covered by this policy is: Fee Simple . . . in: GLADYS L. SMITH."

Chicago's policy was subject to certain stated and general exceptions specified in the policy, namely,

This policy does not insure against loss or damage by reason of the following exceptions: (1) Rights or claims of parties in possession not shown by the public records. (2) Encroachments, overlaps, boundary line disputes, and

any other matters which would be disclosed by an accurate survey and inspection of the premises.

"CONDITIONS AND STIPULATIONS" in Chicago's policy contained the following:

1. Definition of Terms

The following terms when used in this policy mean:

. . . .

(d) "land": the land described, specifically or by reference in Schedule A, and improvements affixed thereto which by law constitute real property; provided, however, the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways . . . .

The policy issued by Chicago to Heyds also provided:

12. Liability Limited to this Policy

This instrument together with all endorsements and other instruments, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company.

Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy.

In their first cause of action Heyds allege a loss covered by Chicago's policy of title insurance, that is, a defect in title to the real estate being purchased from Smith and unmarketability of title to the tract, because the house is not totally situated within the boundaries of the real estate described in the Smith-Heyd contract and Chicago's policy.

Heyds' second cause of action contains the allegation "That [Chicago] was negligent in preparing its title report and title policy for [Heyds]" in failing to correctly examine the records of title and in failing to report defects of title to Heyds.

The demurrer by Chicago alleged that Heyds' amended petition "fails to set forth a cause of action . . . ." The district

court sustained Chicago's demurrer and held that

> there is no defect in title to the described property, nor is there any unmarketability of title in the face of the petition and therefore said petition does not state a cause of action . . . . The Court further determines that the pleadings cannot be amended to state a cause of action and therefore the action should be dismissed at this stage.

In their appeal Heyds maintain they should be allowed to prosecute their action based on contract, that is, the policy of title insurance, and based on Chicago's negligence regarding the title report.

Regarding policies such as that involved in the case before us, it is settled that a standard policy of title insurance is a contract of indemnity which only insures against defects, discrepancies, or other impediments of record affecting title to the real estate designated in the policy or interfering with the marketability of title to the land described in the policy. Such indemnification does not protect the insured from matters dependent upon a survey or critical inspection of the property unless the policy provides for extended coverage or the insured requests special endorsements. See *Contini v. Western Title Ins. Co.*, 40 Cal. App. 3d 536, 115 Cal. Rptr. 257 (1974). Unless agreed by a title insurance company or required by a provision of the policy of title insurance, an insurance company has no obligation to obtain a survey of the subject real estate before a policy of title insurance is issued. See *Kuhlman v. Title Insurance Company of Minnesota*, 177 F. Supp. 925 (W.D. Mo. 1959); cf. *Offenhartz v. Heinsohn*, 30 Misc. 2d 693, 150 N.Y.S.2d 78 (1956) (a title insurance company is not required to insure any title or interest to real estate beyond the boundaries of the property described in the policy of title insurance).

"[I]nsurance policies should be construed as any other contract and should be given effect according to the ordinary sense of the terms used; and if those terms are clear, they will be applied according to their plain and ordinary meaning." *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 199, 318 N.W.2d 70, 74 (1982).

However, as expressed in *MacBean v. St. Paul Title*

*Insurance Corporation*, 169 N.J. Super. 502, 508, 405 A.2d 405, 408-09 (1979):

> "When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.' . . ."
>
> This doctrine has been specifically applied to title insurance policies. *Sandler v. N. J. Title Ins. Co., 36 N.J. 471, 479* [178 A.2d 1, 5] *(1962).*

In *Paramount Properties Co. v. Transamerica Title Ins. Co.*, 1 Cal. 3d 562, 569, 463 P.2d 746, 750, 83 Cal. Rptr. 394, 398 (1970), the Supreme Court of California commented about a policy of title insurance: " 'If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates.' " (Citing and quoting from *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal. 2d 423, 296 P.2d 801 (1956).)

The policy issued by Chicago insures against any loss or damage resulting from a defect or unmarketability of Smith's title to the real estate being purchased by Heyds. The risk covered by Chicago's policy relates to a deficiency of the vendor's, Smith's, rights to or ownership in the land under contract to Heyds and described in the insurance policy. Loss or damage covered by the insurance policy might occur, for example, if Smith did not have absolute ownership (fee simple) in the described real estate. However, the loss or damage alleged by Heyds has resulted from the location of the house, namely, the house not being located within the boundary lines of the land described in the sale to Heyds and the insurance policy. There is no allegation that Smith does not own fee simple title in the real estate. Likewise, Heyds do not allege any aspect of Smith's title which has caused some doubt about or flaw in the validity of Smith's ownership so that marketability of title is impaired.

By general exception (2) in its policy, Chicago removed from the insurance coverage any loss due to "[e]ncroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the premises." That survey exception is expressed in language having plain and ordinary meaning. Therefore, correct location of any structure on the described premises is not a risk or loss covered by Chicago's policy of title insurance. The district court was correct in sustaining Chicago's demurrer to Heyds' first cause of action. Further, because there can be no question about the policy provisions or terminology concerning the stated survey exception, no amendment to the pleadings can improve Heyds' position in any contract action against Chicago, that is, any action based on the incorrect location of Heyds' house in reference to boundaries of the real estate described in the policy. The district court was correct in dismissing Heyds' contract action based on the policy of title insurance.

The demurrer to Heyds' second cause of action is a different matter. The allegations in that second cause of action describe a situation in which Chicago made some type of title search and issued a title report regarding the Smith-Heyd sale. Presumably, the title report to Heyds stated the name of the person in whom title was vested (Smith) and listed taxes, liens, encumbrances, easements, restrictions, conditions, outstanding interests, and defects to which the title is subject—all as reflected in public records. Undoubtedly that title report was the basis on which the policy of title insurance was issued.

Our research on questions of title insurance has disclosed *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P.2d 254 (1976). Interesting is the fact that one of the defendants in *Ford* was Chicago Title Insurance Company. In *Ford* there was a document entitled "CHICAGO TITLE INSURANCE COMPANY TITLE REPORT." The title report presented to the buyer failed to mention a break in the chain of title (a missing or unrecorded deed). The Supreme Court of Kansas in *Ford* described the "abstract method" for an approved title after an attorney's examination of the abstract of title for real estate. In contrast with the so-called abstract method, there was the title insurance

method where certain minimum information was required to complete the application for title insurance. After that initial information had been received, someone on behalf of the title insurance company examined public records and a title report was issued and sent to the parties involved in the real estate transaction. The Supreme Court of Kansas also noted that a title report indicates clouds on the title which must be cleared to the insurance company's satisfaction before any policy of title insurance is issued. The Supreme Court of Kansas concluded:

> [A] corporation organized for the purpose, among others, of examining and guaranteeing titles to real estate and which in all matters relating to conveyancing and searching titles holds itself out to the public, and assumes to discharge the same duties as an individual conveyancer or attorney, has the same responsibilities and its duty to its employer is governed by the principles applicable to attorney and client. [Citations omitted.] . . .
> . . . .
> Where a title insurer presents *a buyer* with both a preliminary title report and a policy of title insurance two distinct responsibilities are assumed; in rendering the first service, the insurer serves as an abstractor of title and must list all matters of public record regarding the subject property in its preliminary report. When a title insurer breaches its duty to abstract title accurately it may be liable in tort for all the damages proximately caused by such breach. [Citations omitted.]

*Ford v. Guarantee Abstract & Title Co., supra* at 256-58, 553 P.2d at 264, 266. See, also, *Jarchow v. Transamerica Title Ins. Co.*, 48 Cal. App. 3d 917, 122 Cal. Rptr. 470 (1975).

Courts of other jurisdictions have recognized the duty of a title insurance company to use due care regarding inspection of public records and title reports. See, *Sandler v. N. J. Realty Title Ins. Co.*, 66 N.J. Super. 597, 169 A.2d 735 (1961); *Udell v. City Title Ins. Co.*, 12 A.D.2d 78, 208 N.Y.S.2d 504 (1960); *Dorr v. Mass. Title Ins. Co.*, 238 Mass. 490, 131 N.E. 191 (1921); *Sunset Holding Corporation v. Home Title Ins. Co.*, 172 Misc. 759, 16 N.Y.S.2d 273 (1939).

The duty imposed upon an abstractor of title is a rigorous

one: "An abstractor of title is hired because of his professional skill, and when searching the public records on behalf of a client he must use the degree of care commensurate with that professional skill . . . the abstractor must report all matters which could affect his client's interests and which are readily discoverable from those public records ordinarily examined when a reasonably diligent title search is made." [Citations omitted.]

*Jarchow v. Transamerica Title Ins. Co., supra* at 938-39, 122 Cal. Rptr. at 485. See, also, *Hawkins v. Oakland Title Ins. & Guar. Co.*, 165 Cal. App. 2d 116, 331 P.2d 742 (1958); *J. H. Trisdale, Inc. v. Shasta etc. Title Co.*, 146 Cal. App. 2d 831, 304 P.2d 832 (1956); cf. *Williams v Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974) (title insurance company's liability for tort apart from any liability arising out of contract).

We now hold that a title insurance company which renders a title report and also issues a policy of title insurance has assumed two distinct duties. In rendering the title report the title insurance company serves as an abstracter of title and must list all matters of public record adversely affecting title to the real estate which is the subject of the title report. When a title insurance company fails to perform its duty to abstract title accurately, the title insurance company may be liable in tort for all damages proximately caused by such breach of duty. A title insurance company's responsibility for its tortious conduct is distinct from the insurance company's responsibility existing on account of its policy of insurance. Different duties and responsibilities imposed on the title insurance company, therefore, can be the basis for separate causes of action—one cause of action in tort and another in contract.

Heyds should have been permitted to amend their petition regarding Chicago's inspection of public records and the ensuing title report. It was error to deny Heyds the opportunity to amend their second cause of action and to dismiss Heyds' action.

Chicago has suggested some form of contractual merger to preclude any action by Heyds for negligent conduct of the insurance company. Chicago's suggestion is predicated on the

language of paragraph 12 of its policy: "Any claim of loss or damage, whether or not based on negligence . . . shall be restricted to the provisions and conditions and stipulations of this policy."

In *Smirlock Realty v Title Guar*, 52 N.Y.2d 179, 190, 418 N.E.2d 650, 655, 437 N.Y.S.2d 57, 62 (1981), we find:

> Indeed, it is because title insurance companies combine their search and disclosure expertise with insurance protection that an implied duty arises out of the title insurance agreement that the insurer has conducted a reasonably diligent search. . . . This duty may not be abrogated through a standard policy clause which would, if given the effect urged by defendant, place the onus of the title company's failure adequately to search the records on the party who secured the insurance protection for that very purpose.

In any event, we believe that paragraph 12 of Chicago's policy and the suggested merger of any negligence action at best relate to a matter of defense, not to prohibition of a cause of action based on negligence. Whether the language of paragraph 12 is proper and permissible as a defense is another question and is not decided in the present appeal.

For the reasons given, the judgment of the district court dismissing Heyds' first cause of action is affirmed, but the district court's judgment that Heyds' pleading cannot be amended and dismissal of Heyds' second cause of action are reversed. This matter is remanded to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority in this case. I am fearful, however, that the majority opinion may be misread to imply that a title company may issue title reports and thereby perform the duties of an abstracter, though it has not complied with the laws of the State of Nebraska regulating abstracting. See Neb. Rev. Stat. §§ 76-501 et seq. (Reissue 1981). Under the facts of this particular case we are only

concerned with the allegations of the petition, and not whether the case can be proved to the extent that a title company has, in fact, issued a title report. It may very well render itself liable for damages realized by one to whom the report is issued and who relies thereon. Creating such liability, however, does not repeal the statutes of Nebraska regulating abstracting and abstracters, and does not in and of itself authorize title companies to engage in such endeavor without first complying with the requirements of our law. To that extent I believe that the majority is in error in stating that by merely rendering a title report the title insurance company serves as an abstracter of title. Nevertheless, it may still be liable in damages even though it violates the laws of the State of Nebraska pertaining to abstracters.