JOHN OBERHELMAN v. AMELIA E. ALLEN.

1. **Township Trustees No Jurisdiction to Establish Road in Another Township.**

    Trustees of a township have no jurisdiction to lay out and establish a township road through land lying in another township.

2. **Dedication not Shown by Indorsement of Damages Receivable.**

    The endorsement by a land owner of the report of viewers appointed to locate a proposed road, said endorsement reading, "I agree to receive the above damages and open the road when the money is paid," does not show a statutory dedication in the absence of any evidence that the money was ever paid, or that the report of the viewers was accepted or that the other necessary steps required by statute were taken or that the public ever expended any money on said road, or any reference to such way on the public plats or in deeds to the abutting land subsequently executed.

3. **Vacation by Council of Way Marked by Street Signs But Not Found in Public Records, Does not Estop Landowner.**

    Vacation by council of a street, planned to follow the line of said supposed road after annexation of the territory to the adjacent municipality, does not estop the land owner from denying the existence of such a way; nor does the fact that street signs had been placed on the said proposed street, or that the name of the street appeared in a street directory made up by the police department for the use of its officers and on a certain tax plat, afford proof of any right of the public therein.

4. **Permissive and Occasional Use of Enclosed Way Vests no Rights in Public.**

    Occasional use of a private way, fenced in on both sides and to which admission was had through gates and evidently by permission of the land owner, does not ripen into a prescriptive right or vest any title in the public for the purpose of a public way.

*Herman P. Goebel* and *Oliver M. Dock*, for plaintiff.

*Matthews & Matthews* and *Nelson & Hickenlooper*, for defendant.

## JONES (O. B.), J.

Plaintiff claims he has established the existence of a public road or street thirty feet in width known as Hazard road or lane, and sometimes called Lincoln avenue, which extended from

Oberhelman  v. Allen.

St. Lawrence avenue (or Rapid Run road) southwardly to the Thomas Hazard farm over the east part of the land formerly owned by Robert Goudy, who was defendant's predecessor in title, and that the east line of said road was the west line of the land of William Terry, who was the predecessor in title of the plaintiff. He admits that no part of this road was taken from the land of his predecessor in title, but claims that such land abutted on the east side of said road and therefore he was entitled to use it. He claims that the council of the city of Cincinnati, upon the petition of the grantors of defendant, by ordinance vacated Hazard road in the year 1906, and that by reason of such vacation he has an interest as an abutting property owner in the vacated road by way of an easement in the entire road or a fee in the east half of the road.

If, as contended by plaintiff, Hazard road was a dedicated highway in which he had the right of an abutter, the order of council vacating it would operate as a revocation of its acceptance by the council, and the right of the general public therein would cease, but the right-of-way over it and the easement in it theretofore enjoyed by plaintiff would not be impaired by such vacation, and he would continue to have such easement in its entire width. Section 3729 G. C., *McQuigg* v. *Cullins*, 56 Ohio St. 649 [41 N. E. 595]; *Kinnear Mfg. Co.* v. *Beatty*, 65 Ohio St., 264; *Hamilton G. & C. Trac. Co.* v. *Parish*, 67 Ohio St. 181, 190 [65 N. E. 1011; 69 L. R. A. 531]; *Stevens* v. *Shannon*, 3 Circ. Dec. 386 (6 R. 142); *Price* v. *Toledo*, 25 O. C. C. 617, (4 N. S. 57); *Schlemmer* v. *Furniture Co.*, 18-28 O. C. C. 474, (7 N. S. 468).

Plaintiff would not, however, acquire any interest in the fee. It would remain in the original owner and his grantees. When the public right is relinquished, the private rights which have been suspended or subservient to those of the public would revive, and the land would be the property of the owner, disencumbered of the public use. Angell, Highways (3d Ed.), 326. As stated in *Lawrence Ry.* v. *Williams*, 35 Ohio St., 171, 172:

"As between the public and the owner of land upon which a common highway is established * * * the fee of the land remains in the owner; he is taxed upon it; and when the use or

easement in the public ceases, it reverts to him free from incumbrance.''

Usually when a road or street is dedicated it is taken equally from adjoining proprietors on each side of its center line, and in a plat of a subdivision the owner so plats his streets as to lay out lots on both sides. In such cases on vacation of the road or street it is said to "revert" not to the original owner of the land so dedicated, but to the owners of the abutting lots and land at the time of such vacation. *Kinnear Mfg. Co.* v. *Beatty*, 65 Ohio St., 264; *Stevens* v. *Shannon, supra* (affirmed, *Stevens* v. *Taylor*, 51 Ohio St., 593) ; *Price* v. *Toledo, supra*. It has been said to "adhere to the abutting lots by accretion" going there by necessity to preserve to the owners their easement of ingress and egress. *Hamilton G. & C. Trac. Co.* v. *Parish, supra.*

The rule that proprietors presumptively own the fee of the soil under that half of the road which is contiguous to their lands is founded on the presumption that the land covered by the highway was originally granted by the adjoining owners in equal proportions. When it appears that it was all granted by a single proprietor, the presumption is rebutted. His laying a servitude can not transfer a title to the fee. *Seery* v. *Waterbury*, 82 Conn., 567, 570 [74 Atl. 908; 25 L. R. A. (N. S.) 681; 18 Ann. Cas. 73]. To the same effect are *Watrous* v. *Southworth*, 5 Conn., 305; *Robbins, In re*, 34 Minn., 99 [24 N. W. 356; 57 Am. Rep. 40] ; *Jose* v. *Hunter*, 101 N. E. (Ind.), 665, 669; *McCombs* v. *Stewart*, 40 Ohio St. 647, 669.

The important question to be determined in this case is whether Hazard road, or lane, ever became a dedicated or public highway. Unless such fact can be established, plaintiff has shown no rights in the land in dispute.

A public road or street is established in one of three ways: 1. By statutory dedication. 2. By dedication under the common law. 3. By prescription.

To show a statutory dedication it is necessary to prove that the land was conveyed to the public for road or street purposes by deed or plat duly recorded and accepted by the proper authorities, or that proper proceedings were taken by the township trustees of the proper township, the county commissioners

er the council of the city, to appropriate the land for road or street purposes. A failure to comply with the steps made necessary by the statute in any essential particular would show that there was no statutory dedication. *Lockland* v. *Smiley*, 26 Ohio St. 94, 99; *Drucker* v. *Home City*, 31 O. C. C. 466 (12 N. S. 309), (affirmed, *Home City* v. *Drucker*, 81 Ohio St., 507).

Outside of the proof offered as to proceedings had by the trustees of Delhi township looking to the establishment of a township road, no evidence whatever has been offered to establish any statutory dedication in this case. As this land was located in Storrs township and was never located in Delhi township, action taken by the trustees of Delhi township was entirely without authority or effect, as they had no ex-territorial jurisdiction. Such proceedings must be had before the "trustees of the proper township," *i. e.*, the township in which the land is situated. Section 6958 G. C.

To show a common law dedication it must appear not only that the owner intended to give and did give the property to the public, but also that the gift was accepted by the authorities whose duty it would be to care for the road or street if it should be established. *Railroad* v. *Roseville*, 76 Ohio St., 108, 115, 117 [81 N. E. 178].

While it must be admitted that the proceedings had before the Delhi township trustees were of no effect to constitute a statutory dedication, it is contended that they were effective as a common law dedication. It is true that the report of the viewers describes the road commended by them to be laid out from the small Hazard farm two rods (33 feet) in width on the west side of the line between the lands of William Terry and Robert Gowdy until it intersects the county road and assess the damages in favor of Robert Gowdy at $35, and after this report, in the record is the following statement:

"I agree to receive the above damages and open the road when the money is paid.        "ROBERT GOWDY."

This statement can not be extended beyond its terms to evidence an intention on Gowdy's part to give the property. It merely indicates a willingness on his part to comply with what he evidently considered to be the result of an adversary pro-

ceeding had before public authorities. There is, however, an entire absence of proof that these damages were ever paid. Nor does the record of proceedings show that the report of the viewers was ever acted on or approved by the trustees, or that they ever ordered the damages to be paid or the road to be established and opened, or in fact that they took any further action in the matter. The proceedings were faulty and irregular in other respects. There is nothing in the record to show posting of notices or that a bond for costs, etc., was given. No plat is shown accompanying the surveyor's report, which differs in some respects in the description of the road from that contained in the report of the viewers. These irregularities and failures to comply with the law for laying out a township road, then in force, Section 14 of the act of February 26, 1824, 2 Chase's Statutes, 1393, 1396 now found in Secs. 6958 to 6966 G. C., would invalidate the proceedings, even if they had been had by the trustees of Storrs township (*Ferris* v. *Bramble,* 5 Ohio St. 109; *Fravert* v. *Finfrock,* 43 Ohio St. 335), [1 N. E. 875].

They must be held ineffective to secure a common law dedication.

Giving the utmost force to the statement of Robert Gowdy, found in the record of the township trustees, as an offer on his part to dedicate, such offer was withdrawn or revoked by his deed of general warranty, dated November 21, 1829, conveying all of his property, including but not mentioning this road to his son, Robert Gowdy, Jr. *Lockland* v. *Smiley, supra; Drucker* v. *Home City, supra.*

Other than this statement of Robert Gowdy in the Delhi township record there is no evidence of any intention on his part or that of any subsequent owner to give this road to public use, nor of any actual giving of it, nor of any acceptance of it by any public officers having authority over roads or streets.

Deeds have been introduced in evidence showing a complete chain of defendant's title. None of these deeds show any reference to this road except the quit-claim deed from Ann E. Moore to A. Hickenlooper, dated July 18, 1896. In this deed the grantor quit-claimed her interests to her co-tenant in a tract of land which is described by metes and bounds, and fixed the

### Oberhelman v. Allen.

west line of Hazard road as the east line of the track quit-claimed. The description used does not define the Hazard road either as a public or a private highway or in any way fix or determine its status. The deed from William White and wife, the previous owner, to Ann E. Moore, and A. Hickenlooper jointly, made no mention of the road, but described the tract so as to include the land covered by it.

A deed from Mary A. Hazard to Edward M. Pattison, dated December 31, 1889, conveying part of the Hazard farm including a way out to Rapid Run road, refers to the roadway in question as a "right-of-way belonging to grantor."

In an agreement between Robert Gowdy, Jr., and one John Jett, dated January 6, 1832, in describing a private roadway across Gowdy's land, mention is made of a "road granted by Robert Gowdy, Sr., to Thomas Hazard," thus indicating a private grant to Hazard. Defendant produced evidence that the public records contained no record of any plat or instrument making such a conveyance or making any dedication of said road.

It was shown that at one time, previous to the vacation proceedings of the city council of Cincinnati, Hazard lane appeared on the tax plat in the office of the county auditor as a public way. These plats are prepared for taxing purposes, and while they are usually instructive they form no part of the public records showing title to land, such records being in the recorder's office.

Plaintiff also showed that Lincoln avenue was at one time included in a street directory which had been prepared and used by the police department of the city, and urge that as showing a recognition and acceptance of it by the city as a public street. The police department has no authority in regard to the laying out or acceptance of streets. That power is expressly vested in the council or public service department. Its place in the police manual was merely for information of officers as to localities. Nor can the fact that a street sign was placed on Lincoln avenue at the Rapid Run road be deemed of much importance in determining its character as a public highway. Such signs are for the convenience of the public in fixing localities. No

showing was made by whose orders or on what authority a sign was placed on this roadway. There is no evidence that any improvement or repairs were ever made upon this roadway at the expense of the public, but on the contrary there is evidence that any repairs made were by the owner of the land, or the owners or tenants of the Hazard farm.

Plaintiff has failed to establish a dedication by common law.

Roads and streets may be established by prescription where, under claim of right, use is shown by the public, adverse to the right of the owner, continued without substantial interruption or change for a period equal to the statutory limitation of actions for the recovery of real estate. *Railroad* v. *Roseville, supra.*

"In order, however, that the enjoyment of an easement in another's land may be conclusive of the right, it must have been adverse, that is, under a claim of title, with the knowledge and acquiescence of the owner of the land, and uninterrupted; and the burden of proving this is on the party claiming the easement. If he leaves it doubtful, whether the enjoyment was adverse, known to the owner, and uninterrupted, it is not conclusive in his favor. 2 Greenleaf on Evidence, Sec. 38 and 539."

"Under a different rule, license would grow into grants of the fee, and permissive occupations of land become conveyances of it. 'It would shock the sense of right,' Chief Justice Marshall said in *Kirk* v. *Smith*, 9 Wheat., 286, 'which must be felt equally by legislators and judges, if a possession which was permissive and entirely consistent with the title of another should silently bar that title." *District of Columbia* v. *Robinson*, 180 U. S., 100 [21 Sup. Ct. 283].

A careful consideration of the evidence leads us to the opinion that this roadway was originally a private way or easement, possibly as a way of necessity, to furnish access to the Hazard farm. It was for many years kept fenced, with a gate at the Hazard north line, and another at or near Rapid Run road. Its use was evidently by permission of the owners of the land, from Robert Gowdy down and until the opening and extension of West Eighth street through the cemetery in 1895, and the Hazard property in 1899, the only travel upon it was by those going to and from the Hazard farm and the Gowdy or Hicken-

Oberhelman  v. Allen.

looper farm, as there were then no cross streets or other outlet. People walked in the grassy lane in summer and brought their children, ate lunches in the shade, picked flowers, and had sort of picnics'' there; some passed through to the cemetery as a short cut; and it appears that plaintiff and the owner of the property south of him, lying east of the roadway, on occasions entered their property from this land. But each had independent entrances from the highway and did not use the lane with any frequency or continuity. Such occasional use without any adverse claims, with the evident permission of the owners, did not ripen into any prescriptive rights or vest any title in the public for the purposes of a public way.

Nor does the fact that the Hickenloopers petitioned council for the vacation of Hazard road create any estoppel against defendant and prevent her from denying that Hazard road was then a public highway. Such vacation was properly sought for the purpose of removing what some purchasers might regard as a cloud on their title, they being then about to plat a subdivision of the property for sale in lots. This has been distinctly decided in *Stevens* v. *Shannon, supra*.

From all the evidence it must be concluded that Hazard lane, or road, never was a public way. Plaintiff therefore has no right or interest in any part of the land occupied by it. The title of plaintiff is in no way dependent on the vacation proceedings of the city. As stated above, such vacation confers no title but simply disclaims any further interest on the part of the city. Section 3729, G. C.

The petition of plaintiff will be dismissed and defendant will be granted a decree quieting her title as prayed in her cross-petition.

**Jones (E. H.)**, and **Gorman, JJ.**, concur.