SCHAIBLE, APPELLANT, *v.* LOUISVILLE TITLE INSURANCE CO., APPELLEE.

(No. 7158—Decided April 30, 1963.)

*Mr. George E. Tyack* and *Mr. Howard F. Wehr*, for appellant.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Byron E. Ford, Mr. Richard G. Ison* and *Mr. Herbert R. Brown*, for appellee.

TROOP, J. This is an appeal on questions of law from a summary judgment entered in favor of defendant, appellee herein, by the Court of Common Pleas of Franklin County. The petition of the plaintiff, appellant herein, was dismissed. Reference here is to plaintiff and defendant, as they appeared in the trial court.

Plaintiff alleges in his petition that he is the owner of certain real estate upon which defendant issued two title insurance policies covering the real estate he owned against defects in title. Plaintiff alleges further that the parcels of land, covered by the policies issued by defendant, were described as "bounding upon a 20-foot alley lying immediately to the west of said described real estate." He then alleges that the alley is non-existent, which fact restricts the uses of the property to the damage of the plaintiff because of the resulting reduction in the value of the land, and, further, that he has repeatedly demanded that defendant correct the defect in title, which it refuses or neglects to do, or in the alternative to pay the face amount of the policies in damages.

The case was submitted to the trial court on the motion of defendant for a summary judgment. There was before the court a stipulation by the parties, a deposition of the plaintiff, the affidavit of the plaintiff and the briefs and arguments of counsel.

There is a noteworthy sequence of incidents leading to the issuance of the policies of title insurance upon which plaintiff claims reimbursement. They are in the record and are set out here somewhat chronologically. Plaintiff agreed to buy a parcel of land from Lucille Y. Jacob by a real estate contract dated April 26, 1954. The description of the real estate contained in the contract appears as follows:

"The 40 ft. right of way of the old C.D. and M traction Co. Starting at the north line of Garden Road and running

North 193.34 feet being east of and adjacent to the alley east of lot No. 113 of Highland Gardens No. 2 subdivision.''

Later, the plaintiff entered into a second contract to purchase another parcel of land from the same owner. That real estate contract was dated May 19, 1954. The description of the land in that agreement is as follows:

''The C.D. & M right of way starting at the North line of Garden Road and running South 277.50 feet approx. and approx 40 ft wide''

The first contract provided that the grantor should furnish an abstract of title and the second that she should provide a guaranteed title.

It would appear that by mutual understanding, at least, title insurance was to be provided since on April 30, 1954, the seller, Lucille (spelled also Lucile) Y. Jacob, made application to the defendant to insure the plaintiff as to premises as follows:

''40 ft R/W of C D & M from N line of Garden Rd. & running N 193.34 ft being E of & adj to alley E of Lot 113 Highland Garden No 2 Part of Parcel No 5 in Q C D 1313 p 422.''

On May 28, 1954, an application was made in the same form to cover premises as follows:

''Starts N line of Garden Rd & runs S approx 277.5 ft.''

More formal descriptions appear in later instruments. These appear to have been prepared by engineers at the instance of the title company. The deposition of the plaintiff and the exhibits attached thereto support such conclusion, although plaintiff says in his affidavit that the description was drawn by the title company. The parcels are located in the city of Columbus, county of Franklin, and state of Ohio. Each parcel is separately described and throughout the record they are referred to as Parcel I and Parcel II. Parcel I is more particularly described as follows:

''Situate in the city of Columbus, county of Franklin, and state of Ohio, and bounded and described as follows:

''Beginning at an iron pin where the north line of Garden Road produced 20.14 feet easterly from the southeast corner of Lot 113 of Highland Gardens Addition (of record in Plat Book 12, pages 3 and 4, Recorder's Office, Franklin County, Ohio) would intersect the westerly right of way of the C.D. & M. Rail-

road; thence along the westerly line of said right of way and the easterly line of a 20 foot alley, northerly 193.34 feet to an iron pin; thence along the north line of Lot 113, produced easterly 40.28 ft. to an iron pin; thence along the easterly line of the C.D. & M. tract and the west line of the C.C.C. & St. L. Railroad, southerly 193.34 feet to an iron pin; thence westerly on the north line of Garden Road, produced, 40.28 feet to the place of beginning, containing 0.178 acre, more or less.''

Parcel II is more particularly described as follows:

''Beginning at an iron pin where the north line of Garden Road produced easterly would intersect the west right of way line of the C.D. & M. Right of Way; thence across the C.D. & M. Right of Way, easterly 40.28 feet to an iron pin; thence along the west line of the CCC & St. L. Railroad, southerly 278.15 feet to an iron pin; thence along the north lines of Lots 201 and 202 of Clinton Summit Addition, westerly 40.28 feet to an iron pin; thence along the east line of a 20 foot alley running along the east side of Lot 305 of Highland Gardens Addition (Plat Book 12, pages 3 and 4, Recorder's Office, Franklin County, Ohio) 278.15 feet to the place of beginning, containing 0.255 acres, more or less.''

Counsel for the plaintiff simply say, in their brief, that this appeal is because the trial court erred in granting summary judgment to the defendant company. In support of this appeal, counsel assert as follows:

''A proper search of the records would have revealed to the title insurance company that the property described in its binders had been dedicated as a sixty foot roadway which was to have been an extension of Indianola Avenue; that an extension of Indianola Avenue was located elsewhere, and that the sixty foot strip was abandoned by the city of Columbus, the same reverting to the original owner who subsequently deeded the twenty feet referred to as an alley to adjacent property owners.''

Such statement as to what the records would have revealed was of no help to the trial court and is of little assistance here. A search of the record fails to reveal any evidence as to the dedication of a 60-foot roadway in the first instance. Reference in the formal descriptions of both Parcels I and II is to a subdivision known as Highland Gardens Addition (of record

in Plat Book 12, pages 3 and 4, Recorder's Office, Franklin County, Ohio), but the plat of the subdivision is nowhere in evidence.

Chapter 711, Revised Code, provides for the platting of subdivisions as additions to a municipality, for the approval by appropriate authority, and for the recording of the plat by the county recorder after the proper certification and approval. Section 711.06, Revised Code, provides that a plat of grounds in a municipal corporation shall describe "with certainty all grounds laid out or granted for streets, alleys * * *." Sections 711.04 and 711.06, Revised Code, provide for the recording of the plats, and Section 711.07, Revised Code, provides that upon recording:

"* * * the plat shall thereupon be a sufficient conveyance to vest in the municipal corporation the fee of the parcel of land designated or intended for streets, alleys, ways * * * to be held in the corporate name in trust to and for the uses and purposes set forth in the instrument."

Since dedication of a street or an alley amounts to a transfer of real property "in trust" it becomes necessary to know if ground was dedicated and what was dedicated. The recorded plat, therefore, of the real estate in question becomes vitally necessary to a determination of what the plaintiff did or did not acquire by the deed of conveyance from Lucille Y. Jacob.

The vacation process is also provided in Chapter 711, Revised Code, and public records are available to establish that fact. Rights and interests of the owners of lots and lands abutting vacated land, because of the "in trust" provision, are determined by who owned what at the time of dedication as well as by who owns what at the time of vacation. See the chapter on "Dedication" in 17 Ohio Jurisprudence (2d), beginning at page 5, and particularly Section 89, at page 90, and the cases in supporting footnotes.

Plaintiff could not hope to establish a claim to vacated lands, as he appeared before the trial court without sufficient evidence from public records to support his claim, even though the title company might have discovered upon a complete search such basic facts. At least it can be said that nothing in the record before this court indicates that plaintiff's grantor, Lucille Y. Jacob, had an interest to convey in vacated lands, ac-

tually or inferentially. In their brief, counsel say:

"The basic principle of law is that a grant of land bordering on a roadway is a grant to the center of such alley or roadway."

The refinements of that proposition are found in 17 Ohio Jurisprudence (2d), 91, Section 89. Where title is acquired by an abutting owner by accretion, or in cases of dedications by adjoining proprietors where the property line between them was the center of the dedicated lands, the rule applies. But, where the dedication was by a single proprietor the rule is otherwise.

Plaintiff's counsel argue further, that the trial court erred in construing the "binder" issued herein and the policy of insurance as one contract. They assert that plaintiff was led to believe that the grantor or seller, Lucille Y. Jacob, had a fee simple interest in the land to be conveyed and that the plaintiff could buy it with safety. Plaintiff asserts, in his affidavit, that it was his belief that the alley was there. Presumably there were two binders, although only one appears in the record, since there were two policies of insurance. The binders describe Parcels I and II exactly the same as the descriptions appear in the deeds of conveyance and the policies of insurance. Counsel argue, however, that the binder and the policy are separate and distinct, because there are more limitations and restrictions in the policy itself.

The use of binders in the insurance business is so common and general that it can almost be said that everyone should know of the practice. Be that as it may, the binder, or executory contract to insure, contains the specific provision that the defendant, upon the meeting of certain requirements, will issue "its policy of title insurance, on its usual form, * * *." The acceptance of the binder and the acceptance of the policy when issued, after payment of premium assessed and the meeting of all other requirements, would appear to bind both insured and insurer under the policy contract.

There is authority to support an even more extreme position. In 44 Corpus Juris Secundum, 953, Section 229, a (2) (d), it is suggested that, in the case of fire insurance, where the executory contract is silent as to the terms of the policy "it is presumed to contemplate insurance on the terms contained in

the policy customarily issued." The relation of the preliminary and final contracts seems rather clearly established and it is not improper to construe them together.

If, however, the instruments are regarded as two separate contracts the content of each needs to be examined in comparison with the content of the other. Both binder and policy, covering Parcel I and Parcel II, in each instance, contain the same description of the real estate covered. The exceptions in the binders under Schedule B, Item 4, include a provision as follows:

"Any question of title or marketability, dimensions, encroachments, location of boundary lines * * * which would be disclosed by a complete and accurate survey of the premises * * *."

There was a survey. If the survey were made at the instance of the title company it was paid for by the plaintiff herein. (Defendant's exhibit B attached to plaintiff's deposition.) The survey of Parcel I is also attached to plaintiff's deposition as defendant's exhibit C. It would appear that the engineers produced the formal descriptions used in the binders, deeds, and policies of insurance. (Defendant's exhibit F attached to plaintiff's deposition.) Before the binders appeared plaintiff relied upon the very informal descriptions as they appeared in the contracts and applications set out above. To satisfy the provision in Item 4 of the binder, the survey must be complete and accurate. Nothing appears in the record to challenge the accuracy of the survey. Therefore, we need to inquire into the effect of reference to any alley in the descriptions used in binders and policies.

Reference is to 11 Corpus Juris Secundum, 591, Section 39, and to 7 Ohio Jurisprudence (2d), 625, Section 17, which contains language as follows:

"* * * Thus a deed calling for a line running with the westerly line of the street conveys only to the westerly line. A call to an alley and thence south along the west line of said alley excludes the alley. * * *"

In *Jackson* v. *Bellamy* (1931), 10 Ohio Law Abs., 700, the court held that an abutting property owner, whose deed description was only to the north boundary of the roadway, owned only to that boundary line. The Court of Appeals of the Eighth Ap-

pellate District, in its decision, quotes from *Oberhelman* v. *Allen* (1915), 7 Ohio App., 251, as follows:

"The rule that proprietors presumptively own the fee of the soil under that half of the road which is contiguous to their lands is founded on the presumption that the land covered by the highway was originally granted by the adjoining owners in equal proportions. When it appears that it was all granted by a single proprietor, the presumption is rebutted."

Admittedly this is a long road to the conclusion we reach. Plaintiff complains of the misleading character of the binder. He had it before him prior to closing the sale. The description in the binder used an alley as a boundary and nothing more. This is in addition to the fact of his having relied upon less accurate descriptions in his real estate contracts. Even without the restrictive limits in the title policy he could hardly be heard to say that the fault was in the defendant and that he would not have purchased had he known.

Plaintiff relies upon the case of *Burks* v. *Louisville Title Ins. Co.* (1953), 95 Ohio App., 509, to support his claim for recovery. It is not a case identical to the instant case. The land owner employed a surveyor who found a triangular piece of land "was not within the premises described and purchased by plaintiff." Here, the claim is predicated upon the existence of an alley used only in the description of the premises conveyed and there was no evidence produced in the trial court to show, first, that there was a dedicated alley, and second, that Lucille Y. Jacob had any claim to it, if there were such an alley, by any of the applicable rules of law. It must be established by sufficient evidence that her interest in the alley attached to the land conveyed as described in the deeds and title policies. Again plaintiff has failed to establish by any evidence at all, much less by a preponderance, that he is within the limits of *Greenberg* v. *L. I. Snodgrass Co.* (1954), 161 Ohio St., 351.

The binder alone, as a separate contract, is sufficient to preclude recovery by the plaintiff. A provision in item 8 of the "Conditions and Stipulations" in the policy strengthens the position of the defendant, if such is necessary. The limitation is as follows:

"Nothing contained in this policy shall be construed as in-

suring * * * (4) the title or rights of the insured in any property beyond the lines of the property described in Schedule A hereof, or in any street, road, avenue, lane or way upon which said property abuts * * *."

Finally, attention is called to the annotation in 40 A. L. R. (2d), 1247, particularly to Section 3, on page 1248. The discussion relates to the case of *Shaver* v. *Title Guaranty & Trust Co.* (1931), 163 Tenn., 232, 43 S. W. (2d), 212. The claim of the land owner was based upon the alleged negligence of the title company which insured the title to a lot, the description for which, in deed and policy, recited frontage on a street. There was in fact, no street; rather, there was only a strip of land, referred to in the description "as Blackford Street," which was privately owned and later closed permitting the land owner no ingress and egress to his lot. It was held that the matter complained of was not within the protection of the title policy. This reported case is almost exactly like the instant case.

For these reasons we believe that the trial court was correct in the conclusions reached and that summary judgment was appropriate.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BRYANT, P. J., and DUFFEY, J., concur.