**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1116
_____

BLUEPRINT CAPITAL ADVISORS, LLC

v.

STATE OF NEW JERSEY DIVISION OF INVESTMENT; BLACKROCK, INC.;
BLACKROCK ALTERNATIVE ADVISORS; CLIFFWATER, LLC;
TIMOTHY WALSH, in his individual and professional capacities;
SAMANTHA ROSENSTOCK, in her individual and professional capacities;
JASON MACDONALD, in his individual and professional capacities;
CHRISTOPHER MCDONOUGH, in his individual and professional capacities;
COREY AMON, in his individual and professional capacities;
DINI AJMANI, in her individual and professional capacities;
PHILIP MURPHY, in his official capacity as Governor of the State of New Jersey;
OWL ROCK CAPITAL CORPORATION; DERRICK GREEN; GEORGE HELMY;
MATTHEW PLATKIN, in their individual and professional capacities

Timothy Walsh,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-07663)
District Judge: Honorable Julien X. Neals
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 17, 2023

Before: CHAGARES, *Chief Judge*, MATEY and FUENTES, *Circuit Judges*.

(Filed: December 22, 2023)

_____

**OPINION**[*]
_____

**FUENTES**, *Circuit Judge*.

Blueprint Capital Advisors, LLC ("BCA") sued a former member of its advisory board, Timothy Walsh, for allegedly participating in a discriminatory conspiracy to misappropriate BCA's confidential and proprietary investment model for public pension funds. Walsh argues that BCA's claims against him must be resolved by arbitration due to an arbitration clause in the Transaction Agreement entered into between BCA and Walsh's living trust. We cannot address that issue because the arbitration clause delegates the threshold question of arbitrability to an arbitrator. So we will vacate the District Court's order denying Walsh's motion to compel arbitration and remand for further proceedings.

**I.**[1]

**A.**

BCA is an investment advisory firm. BCA and Walsh's trust[2] entered into the Transaction Agreement in June 2017, approximately two years after Walsh joined BCA's advisory board. Under the Transaction Agreement, Walsh's trust made a $75,000 capital

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

[1] Because we write solely for the parties, we recite only the facts necessary to our disposition.

[2] We will not consider BCA's argument that Walsh is not a party to the Transaction Agreement and therefore cannot invoke the arbitration clause because that argument was raised for the first time on appeal. *See Freeman v. Pittsburgh Glass Works*, *LLC*, 709 F.3d 240, 249 (3d Cir. 2013) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

2

contribution to BCA. In exchange, Walsh's trust became a "Member" of BCA with "rights and responsibilities" set forth in the Transaction Agreement.[3]

As part of the Transaction Agreement, Walsh's trust "confirm[ed] and agree[d]" that:

> [I]t has not and shall not; and . . . its Affiliates have not and [it] shall cause . . . its Affiliates not to, directly or indirectly, disclose(d) to any Person or use(d) for [its] own benefit any BCA Party Confidential Information . . . concerning the business, contacts, finances or operations of the BCA Parties or their respective Affiliates.[4]

The Transaction Agreement also includes an arbitration clause, which states:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof, that cannot be settled between the Parties, shall be settled by arbitration in accordance with AAA and pursuant to the AAA Rules; *provided*, that each Party shall retain his or its right to commence an action to obtain specific performance or other equitable relief from any court of competent jurisdiction.[5]

The Transaction Agreement defines "AAA Rules" to mean "the Commercial Arbitration Rules of the American Arbitration Association."[6] The Transaction Agreement also states that it "supersede[s] all other prior agreements and understandings, whether oral, written, or electronic, among the Parties hereto and their respective Affiliates with respect to the subject matter hereof or thereof . . . ."[7]

---

[3] App. 245.
[4] App. 250.
[5] App. 257 (emphasis in original).
[6] App. 282.
[7] App. 258.

**B.**

BCA's complaint—initially filed in June 2020 but subsequently amended in November 2020—alleges that Walsh used his advisory position to extract BCA's confidential information. It asserts claims of racketeering, fraud, breach of contract,[8] breach of fiduciary duty, and civil conspiracy against Walsh, and seeks declaratory relief, monetary damages, and attorneys' fees and costs from him.[9]

In February 2021, Walsh moved to dismiss the Amended Complaint or to compel arbitration based on the Transaction Agreement's arbitration clause. In December 2022, the District Court denied Walsh's motion to dismiss in significant part and denied his motion to compel arbitration in its entirety. On Walsh's motion to compel arbitration, the District Court concluded that the dispute falls outside the scope of the arbitration clause, but did not first consider whether the parties agreed to delegate the issue of arbitrability to an arbitrator. Walsh appeals only the District Court's denial of his motion to compel arbitration.

**II.**

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16.[10] We exercise plenary

---

[8] BCA's breach of contract claim does not explicitly refer to the Transaction Agreement. Rather, BCA alleges that "Walsh contracted with BCA to serve as a member of BCA's advisory board," "owed BCA a duty of confidentiality associated with his agreement to serve as a member of the advisory board," and "breached his duties to BCA by, among other things, disclosing proprietary confidential information." App. 234.

[9] The Amended Complaint seeks injunctive relief against other defendants.

[10] *See Griswold v. Coventry First LLC*, 762 F.3d 264, 268 (3d Cir. 2014).

4

review over the District Court's order on a motion to compel arbitration, except for underlying findings of fact, which we review for clear error.[11]

### III.

The Supreme Court has consistently held that parties may agree to have an arbitrator, rather than a court, resolve threshold arbitrability questions, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[12] If the parties have a valid arbitration agreement that delegates the issue of arbitrability to an arbitrator by "clear and unmistakable" evidence, "a court possesses no power to decide the arbitrability issue."[13] "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."[14]

There is no dispute that the parties have a valid arbitration agreement,[15] and Walsh argues that the parties' incorporation of the rules of the American Arbitration Association ("AAA") in the arbitration agreement constitutes "clear and unmistakable" evidence of their agreement to delegate arbitrability questions to an arbitrator. We agree.

---

[11] *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008).

[12] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 529 (2019) (quoting *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) and citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).

[13] *Id.* (quoting *First Options*, 514 U.S. at 944); *see also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020).

[14] *Henry Schein*, 139 S. Ct. at 529.

[15] Because there was no challenge to the validity of the arbitration clause before the District Court, we will treat the arbitration clause as a valid and enforceable agreement. *See Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 326 (3d Cir. 2022) (quoting *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020)).

The arbitration clause states that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof . . . shall be settled by arbitration in accordance with AAA and pursuant to the AAA Rules,"[16] which the Transaction Agreement defines as the AAA's Commercial Arbitration Rules.[17]  And Rule 7(a) of the AAA Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[18]  Because the AAA Rules empower an arbitrator to resolve arbitrability questions, their incorporation into an arbitration agreement may constitute a clear and unmistakable delegation of arbitrability, so long as the parties' agreement does not present ambiguity as to that delegation.[19]

Here, no ambiguity exists.  The arbitration clause broadly applies both to controversies or claims that arise under the Transaction Agreement and those that relate to the Transaction Agreement or its breach,[20] and a dispute over arbitrability surely

---

[16] App. 257.

[17] App. 282.

[18] American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a).

[19] *See Chesapeake Appalachia, LLC v. Scout Petrol., LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (holding that the incorporation of unspecified AAA rules requiring a "daisy-chain" of cross-references to the AAA's Supplementary Rules did not serve as a clear and unmistakable delegation to an arbitrator to decide class arbitrability); *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 322-23 (W.D. Pa. 2020) (holding that the incorporation of the AAA's Commercial Arbitration Rules in a bilateral arbitration agreement constituted a clear and unmistakable delegation of arbitrability).

[20] We disagree with BCA's argument that the arbitration clause expressly excludes claims that predate the Transaction Agreement.  Nowhere does the Transaction Agreement impose such a rigid temporal restriction.

relates to the Transaction Agreement.[21]  Although the arbitration clause excludes claims that seek "specific performance or other equitable relief,"[22] that carve-out does not narrow the delegation where, as here, neither form of relief is sought.[23]  Furthermore, the Transaction Agreement clearly and unmistakably specifies that the AAA's Commercial Arbitration Rules apply, making Rule 7(a) readily accessible.  We therefore hold that the arbitration clause clearly and unmistakably delegates the threshold arbitrability question, and an arbitrator must determine whether BCA's claims against Walsh are arbitrable.

## IV.

For these reasons, we will vacate the District Court's order denying the motion to compel arbitration and remand for further proceedings consistent with this opinion.

---

[21] *See HealthplanCRM, LLC*, 458 F. Supp. 3d at 324.
[22] App. 257.
[23] *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015).